**FILED**

**DOCKETED**

FEB 1 0 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DANIEL TAUBENFELD, individually
and On Behalf Of All Others Similarly Situated,

Plaintiff,

vs.

CAREER EDUCATION CORPORATION,
JOHN M. LARSON, and PATRICK K. PESCH,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

No. 03 C 8884

Judge Joan H. Lefkow

RECEIVED FOR DOCKETING
04 FEB -9 PH 5: 14
CLERK COURT
U.S. DISTRICT COURT

## NOTICE OF FILING

To:     Counsel on the Attached Certificate of Service

PLEASE TAKE NOTICE that on February 9, 2004, we filed with the Clerk of the United

States District Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn

Street, Chicago, Illinois, the *The Motion of Jeffrey Koontz and Nicholas Margaritis, Jr. for*

*Consolidation and Appointment of Lead Plaintiff and Lead and Liaison Counsel and*

*Memorandum in Support*, a copy of which is hereby served upon you.

Dated:  February 9, 2004                    Respectfully submitted,

                                            By:  _____
                                            Marvin A. Miller
                                            Jennifer Winter Sprengel
                                            Anthony F. Fata
                                            **MILLER FAUCHER and CAFFERTY LLP**
                                            30 North LaSalle Street, Suite 3200
                                            Chicago, Illinois 60602
                                            (312) 782-4880

## CERTIFICATE OF SERVICE

I, Jennifer Winter Sprengel, an attorney, hereby certify that I caused the *The Motion of Jeffrey Koontz and Nicholas Margaritis, Jr. for Consolidation and Appointment of Lead Plaintiff and Lead and Liaison Counsel and Memorandum in Support* to be served on all parties on the attached service list by placing a copy of the same in the United States Mail at 30 North LaSalle Street, Chicago, Illinois on February 9, 2004.

Jennifer Winter Sprengel

## SERVICE LIST

David H. Kistenbroker
Mary Ellen Hennessy
Joni S. Jacobsen
Karl R. Barnickol
**KATTEN MUCH ZAVIS ROSENMAN**
525 West Monroe Street, Suite 1600
Chicago, Illinois 60661

Steven C. Schulman
Peter E. Seidman
Andrei V. Rado
**MILBERG WEISS BERSHAD**
  **HYNES & LERACH LLP**
One Pennsylvania Plaza
New York, New York 10019

Joshua M. Lifshitz
**BULL & LIFSHITZ**
18 East 41st Street
New York, New York 10017

Marc A. Topaz
Richard A. Maniskas
**SCHIFFRIN & BARROWAY, LLP**
Three Bala Plaza East, Suite 400
Bala Cynwyd, Pennsylvania 19004

Samuel H. Rudman
David A. Rosenfeld
**CAULEY GELLER BOWMAN & RUDMAN LLP**
200 Broadhollow Road, Suite 200
Melville, New York 11747

Norman Rifkind
Leigh Lasky
**LASKY & RIFKIND, LTD.**
351 West Hubbard Street, Suite 406
Chicago, Illinois 60610

Jonathan M. Plasse
Christopher Keller
**GOODKIND LABATON RUDOFF**
  **& SUCHAROW LLP**
100 Park Avenue, 12th Floor
New York, New York 10017

Carol V. Gilden
Michael E. Moskovitz
Louis A. Kessler
**MUCH SHELIST FREED DENENBERG**
  **AMENT & RUBENSTEIN, P.C.**
191 North Wacker Drive, Suite 1800
Chicago, Illinois 60606

Robert I. Harwood
Jeffrey M. Norton
Dana B. Rubin
**WECHSLER HARWOOD LLP**
488 Madison Avenue, 8th Floor
New York, New York 10022

Charles J. Piven
**LAW OFFICES OF CHARLES J. PIVEN, P.A.**
401 East Pratt Street, Suite 2525
Baltimore, Maryland 21202

Sandy A. Liebhard
Joseph R. Seidman, Jr.
**BERNSTEIN LIEBHARD & LIFSHITZ, LLP**
10 East 40th Street, 22nd Floor
New York, New York 10016

Richard A. Lockridge
Karen Hanson Riebel
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, Minnesota 55401

FILED

DOCKETED

FEB 1 0 2004

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

FEB 0 9 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DANIEL TAUBENFELD, individually and on
behalf of all others similarly situated,,

           Plaintiff,

vs.

CAREER EDUCATION CORPORATION, JOHN
M. LARSON and PATRICK K. PESCH,

           Defendants.

Civil Action No. 03-CV-8884 (JHL)

JUDGE LEFKOW

—————————————————————x

JAMES STELLATO, individually and on behalf
of all others similarly situated,

           Plaintiff,

vs.

CAREER EDUCATION CORPORATION, JOHN
M. LARSON and PATRICK K. PESCH,

           Defendants.

Civil Action No. 03-CV-8939 (JHL)

JUDGE LEFKOW

RECEIVED FOR DOCKETING
04 FEB -9 PM 12:14
CLERK
U.S. DISTRICT COURT

—————————————————————x

STUART F. KATZ, , individually and on behalf of
all others similarly situated,

           Plaintiff,

vs.

CAREER EDUCATION CORPORATION, JOHN
M. LARSON and PATRICK K. PESCH,

           Defendants.

Civil Action No. 03-CV-9157 (JBZ)

JUDGE ZAGEL

—————————————————————x

12

```
————————————————————x
                                    :
SID MORRIS and JOANN MORRIS, Individually    :    Civil Action No. 04-CV-305 (HDL)
and on behalf of all others similarly situated,    :
                                    :
              Plaintiff,            :    JUDGE LEINENWEBER
                                    :
       vs.                          :
                                    :
CAREER EDUCATION CORPORATION, JOHN  :
M. LARSON and PATRICK K. PESCH,     :
                                    :
              Defendants.           :
                                    :
————————————————————x
                                    :
ALDEN WOO, on behalf of Himself and all others :
similarly situated,                 :    Civil Action No. 04-CV-339 (RC)
                                    :
              Plaintiff,            :    JUDGE CASTILLO
                                    :
       vs.                          :
                                    :
CAREER EDUCATION CORPORATION, JOHN  :
M. LARSON and PATRICK K. PESCH,     :
                                    :
              Defendants.           :
                                    :
————————————————————x
ERIC R. SCHILD, individually and on behalf of  :
all others similarly situated,      :
                                    :
              Plaintiff,            :
                                    :
       v.                           :    Civil Action No. 04 CV 906
                                    :
CAREER EDUCATION CORPORATION, JOHN  :
M. LARSON and PATRICK K. PESCH,     :
                                    :
              Defendants.           :
                                    :
————————————————————x
```

## THE MOTION OF JEFFREY KOONTZ AND NICHOLAS MARGARITIS, JR. FOR CONSOLIDATION AND APPOINTMENT OF LEAD PLAINTIFF AND LEAD AND LIAISON COUNSEL

12

Jeffrey Koontz and Nicholas Margaritis, Jr., by and through their counsel, hereby move

the Court for an order:

1.   Consolidating the above-captioned actions pursuant to Fed. R. Civ. P. 42(a);

2.   Appointing Messrs. Koontz and Margaritis as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§78u-4(a); and

3.   Approving Messrs. Koontz and Margaritis' selection of Milberg Weiss Bershad Hynes & Lerach LLP to serve as Lead Counsel and Miller Faucher and Cafferty LLP to serve as Liaison Counsel, pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v).

In support herewith, movants submit a Memorandum of Law.

Dated: February 9, 2004                          Respectfully submitted,

                                                 **MILLER FAUCHER & CAFFERTY LLP**

                                                 Marvin A. Miller
                                                 Jennifer W. Sprengel
                                                 30 North Lasalle Street
                                                 Chicago, IL  60602
                                                 (312) 782-4880

                                                 **Proposed Liaison Counsel**

                                                 **MILBERG WEISS BERSHAD HYNES & LERACH LLP**
                                                 Steven G. Schulman
                                                 Peter E. Seidman
                                                 Andrei V. Rado
                                                 One Pennsylvania Plaza
                                                 New York, NY  10119-0165
                                                 (212) 594-5300
                                                 (212) 868-1229

                                                 **Proposed Lead Counsel**

**LAW OFFICE OF ALFRED G. YATES, JR., P.C.**
Alfred G. Yates
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219-1649
(412) 391-5164
**Attorneys for plaintiff Daniel Taubenfeld**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**FILED** **DOCKETED**
FEB 0 9 2004 FEB 1 0 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

---------------------------------------------x

DANIEL TAUBENFELD, individually and on behalf of all others similarly situated,

              Plaintiff,

vs.

CAREER EDUCATION CORPORATION, JOHN M. LARSON and PATRICK K. PESCH,

              Defendants.

Civil Action No. 03-CV-8884 (JHL)

JUDGE LEFKOW

---------------------------------------------x

JAMES STELLATO, individually and on behalf of all others similarly situated,

              Plaintiff,

vs.

CAREER EDUCATION CORPORATION, JOHN M. LARSON and PATRICK K. PESCH,

              Defendants.

Civil Action No. 03-CV-8939 (JHL)

JUDGE LEFKOW

RECEIVED FOR DOCKETING
04 FEB -9 PH 5: 15
CLERK
U.S. DISTRICT COURT

---------------------------------------------x

STUART F. KATZ, , individually and on behalf of all others similarly situated,

              Plaintiff,

vs.

CAREER EDUCATION CORPORATION, JOHN M. LARSON and PATRICK K. PESCH,

              Defendants.

Civil Action No. 03-CV-9157 (JBZ)

JUDGE ZAGEL

---------------------------------------------x

12

```
---------------------------------------------x
                                             :
SID MORRIS and JOANN MORRIS, Individually    :
and on behalf of all others similarly situated,  :   Civil Action No. 04-CV-305 (HDL)
                                             :
                     Plaintiff,              :   JUDGE LEINENWEBER
                                             :
       vs.                                   :
                                             :
CAREER EDUCATION CORPORATION, JOHN           :
M. LARSON and PATRICK K. PESCH,              :
                                             :
                     Defendants.             :
                                             :
---------------------------------------------x
                                             :
ALDEN WOO, on behalf of Himself and all others  :
similarly situated,                          :   Civil Action No. 04-CV-339 (RC)
                                             :
                     Plaintiff,              :   JUDGE CASTILLO
                                             :
       vs.                                   :
                                             :
CAREER EDUCATION CORPORATION, JOHN           :
M. LARSON and PATRICK K. PESCH,              :
                                             :
                     Defendants.             :
                                             :
---------------------------------------------x
ERIC R. SCHILD, individually and on behalf of  :
all others similarly situated,               :
                                             :
                     Plaintiff,              :
                                             :
       v.                                    :   Civil Action No. 04 CV 906
                                             :
CAREER EDUCATION CORPORATION, JOHN           :
M. LARSON and PATRICK K. PESCH,              :
                                             :
                     Defendants.             :
---------------------------------------------x
```

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF JEFFREY KOONTZ
AND NICHOLAS MARGARITIS, JR. FOR CONSOLIDATION AND APPOINTMENT
OF LEAD PLAINTIFF AND LEAD AND LIAISON COUNSEL**

## **INTRODUCTION**

Presently pending before this Court are at least five related securities class actions (the "Actions"), brought on behalf of all persons who purchased or otherwise acquired the securities of Career Education Corp. ("CEC" or the "Company") between April 22, 2003 and December 2, 2003 (the "Class Period"). The Related Actions allege violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §§78j(b) and 78t), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

CEC investors Nicholas Margaritis, Jr. and Jeffrey Koontz (the "Movants") hereby move this Court, for entry of an order: (1) consolidating the Related Actions pursuant to Rule 42 of the Federal Rules of Civil Procedure; (2) appointing them as Lead Plaintiff for the class; and (3) approving their selection of the law firm of Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg Weiss"), to serve as Lead Counsel and Miller Faucher and Cafferty LLP ("Miller Faucher") as Liaison Counsel under §21D(a)(3)(B) of the Exchange Act.

Movants are the most adequate plaintiff, as defined by the PSLRA, because they possess the largest financial interest, having lost more than $52,300 in connection with their purchases of CEC stock during the Class Period. To the best of the Movants' knowledge, this is the greatest financial interest of any moving class member, plaintiff or plaintiff group who has brought suit or filed an application to serve as lead plaintiff in these Actions. In addition, the Movants satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure because their claims are typical of the claims of the putative class and because they will fairly and adequately represent the interests of the class.

## FACTUAL BACKGROUND[1]

CEC is a provider of private, for-profit postsecondary education, with 51 campuses throughout the United States, Canada, France, the United Kingdom and the United Arab Emirates. CEC owns and operates schools in the following career-related fields: Visual Communication and Design Technologies, Information Technology, Business Studies, Culinary Arts, and Health Education.

The Company's business is highly regulated by federal, state and private accrediting agencies, including the Accrediting Council for Independent Colleges and Schools ("ACICS"). The Company's business and stock price is crucially dependent on maintaining compliance with federal and state rules, and on its accreditation and reputation with students and employers. Throughout the Class Period, the Company publicly touted its business and financial performance, the performance of its stock price and its industry leading position as reasons for why investors should purchase its stock. For example, on a webpage titled "Why Invest in CEC?", the Company represented that it has "demonstrated operational excellence," enjoys a "strong competitive advantage," is "a growth leader in a growth market," and has "a graduate placement record that consistently ranks among the industry leaders." Similar representations touting CEC's business and growth were included in the Company's press releases, SEC filings and conference calls. Such representations were materially false and misleading because, unbeknownst to investors, they failed to disclose that CEC had been regularly falsifying student records in order to increase graduation rates and enrollment, conceal problems that could have threatened the accreditation of its schools, and generally, to allow it to increase its profitability. Among other things, CEC's schools graduated students who had not completed required courses

---

[1] These facts are as alleged in the complaint captioned *Taubenfeld v. Career Education Corp.*, et al. No. 03-CV-8884 (JHL).

- 4 -

and regularly credited and billed students for taking courses the students had never attended. Because many of CEC's students receive federal financial aid, the federal government footed tuition bills for courses not attended or passed by students. CEC improperly recognized and reported such payments as revenue. The strong growth reported by the Company throughout the Class Period was grounded in these fraudulent and inherently unsustainable practices, rendering CEC's reported historical financial performance and projections of future growth materially false and misleading.

Defendants were highly motivated to engage in the fraud alleged herein so that CEC insiders could sell their personally held CEC stock at artificially inflated prices. Throughout the Class Period, Career Education insiders sold a total of 1.7 million (split-adjusted) shares of Career Education common stock at artificially inflated prices, reaping gross proceeds in excess of $69 million. That amount includes defendant Larson's proceeds of $22.4 million and defendant Pesch's $11.2 million.

On November 11, 203, the Bergen Record, a local New Jersey newspaper, reported that a former director of CEC's Gibbs College in New Jersey had alleged that the school regularly graduated students who did not complete required courses or attend mandatory internships. These allegations were made in a wrongful termination action filed by the former director of Gibbs College in the Superior Court of New Jersey on November 5, 2003. The former director alleges that she was terminated after repeatedly complaining to her supervisors about the fraudulent business practices she regularly witnessed at the school. Because the story appeared in a local New Jersey daily with very limited circulation, it was not digested by the market and did not immediately affect the Company's stock price. However, on December 3, 2003, the market learned that similar accusations of wrongdoing had been leveled by a highly-placed employee of

a different CEC school in California. On December 3, 2003, Bloomberg News reported that the

former registrar of CEC's Brooks Institute of Photography in Santa Barbara, California filed a

complaint with ACICS alleging that the school falsified student records to ensure that the school

passed inspections by accreditation auditors and to increase enrollment. Bloomberg News quoted

the former registrar as alleging that "Many staff members have been asked by management to

commit forgery, fraud, perjury or whatever is necessary to pass audit inspections." On December

4, 2003, The Street.com quoted the former registrar as stating that "officials at the school acted

illegally and improperly to inflate enrollment and boost the bottom line."

In reaction to this disclosure, CEC's stock price plummeted, falling from $54.76 per

share on December 2, 2003 to $39.48 on December 3, 2003, a one-day drop of 28%, on trading

volume of 18.2 million shares -- more than nine times the Company's three-month daily average.

## ARGUMENT

## POINT I

## THE ACTIONS SHOULD BE CONSOLIDATED

The PSLRA requires that related actions be consolidated prior to the appointment of Lead

Plaintiff and Lead Counsel. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii). Rule 42(a) of the Federal Rules

of Civil Procedure allows the Court to consolidate separate actions:

> When actions involving a common question of law *or* fact are pending
> before the court, it may order a joint hearing or trial of any or all the matters in
> issue in the actions; it may order all the actions consolidated; and it may make
> such orders concerning proceedings therein as may tend to avoid unnecessary
> costs or delay. [Emphasis added].

Fed. R. Civ. P. 42(a). *See generally Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992).*

The Actions readily meet the standard for consolidation because they involve common

issues of law *and* fact. Each plaintiff in the Actions alleges violations of the same sections of the

Exchange Act against the same defendants. Each case was brought by investors who purchased or otherwise acquired CEC shares in reliance on the integrity of the market price during the Class Period and who were injured by defendants' materially false and misleading statements, which artificially inflated the price of CEC's publicly-traded securities. Under these circumstances, consolidation is appropriate. *See Mayo v. Apropos Tech., Inc.*, 2002 U.S. Dist. LEXIS 1924 at \* 6-7 (N.D. Ill. Feb. 6, 2002) (Coar, J.) (consolidating securities class actions where: "[E]ach of the above Related Cases involve class action claims on behalf of the purchasers of Apropos common stock and assert essentially similar and overlapping class claims of relief brought on behalf of purchasers of Apropos common stock . . .").

## POINT II

### MESSRS. KOONTZ AND MARGARITIS SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§78u-4(a)(1) & (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i). Here, notice was published on December 10, 2003, on the *Business Wire*, a national, business-oriented newswire, in connection with the filing of the first-filed action. *See* Exhibit A. Within 60 days of publishing the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §§78u-4(a)(3)(A) & (B).

Second, the PSLRA provides that within 90 days after publication of the notice the court

shall consider any motion made by a class member and shall appoint as lead plaintiff the member

or members of the class that the court determines to be most capable of adequately representing

the interests of class members. 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate

plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any
> private action arising under this [Act] is the person or group of persons that –
>
> > (aa) has either filed the complaint or made a motion in response to
> > a notice ...;
> >
> > (bb) in the determination of the court, has the largest financial
> > interest in the relief sought by the class; and
> >
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal
> > Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii). *See generally In re Motorola Sec. Litig.*, 2003 U.S. Dist. LEXIS

12651 at * 9 ( N.D. Ill. July 16, 2003) (Pallmeyer, J.).

The time period in which class members may move to be appointed lead plaintiff in this

case, under 15 U.S.C. §§78u-4(a)(3)(A) & (B), expires February 9, 2004. Pursuant to the

provisions of the PSLRA and within the requisite time frame after publication of the required

notice, the Movants have timely moved this Court to be appointed lead plaintiff on behalf of all

members of the class.

The Movants have filed sworn certifications stating that they have reviewed the

allegations of the complaint and are willing to serve as representative parties on behalf of the

class. *See* Exhibit B. In addition, the Movants have selected and retained counsel experienced in

the prosecution of securities class actions to represent them and the class. *See* Exhibit D-E

(attaching firm resumes of Milberg Weiss and Miller Faucher). Accordingly, the Movants

satisfy the individual requirements of 15 U.S.C. §78u-4(a)(3)(B), and are entitled to have their

application for appointment as lead plaintiff, and their selection of Milberg Weiss as Lead

Counsel and Miller Faucher as Liaison Counsel approved by the Court.

### A. Messrs. Koontz and Margaritis Have the Largest Financial Interest in the Relief Sought by the Class

Movants lost in excess of $52,300 on their purchase of CEC common stock during the

Class Period. As such, Movants have a significant financial interest in the outcome of this

litigation. Exhibit C (attaching a chart detailing the calculation of Movants' financial interest).

To the best of our knowledge, there are no other applicants or applicant groups who have sought,

or are seeking, appointment as lead plaintiff that have a larger financial interest than Messrs.

Koontz and Margaritis. Therefore, Movants satisfy the PSLRA's prerequisite of having the

largest financial interest and are presumptively the most adequate plaintiff to represent the class

pursuant to 15 U.S.C. §78u-4(a)(3)(B). *See Motorola Sec. Litig.*, 2003 U.S. Dist. LEXIS 12651

at * 9.

### B. Messrs. Koontz and Margaritis Otherwise Satisfy Rule 23 of the Federal Rules of Civil Procedure

According to 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc), in addition to possessing the largest

financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y]

the requirements of Rule 23 of the Federal Rules of Civil Procedure." Of Rule 23(a)'s four

prerequisites to class certification, only two – typicality and adequacy – directly address the

personal characteristics of the class representative. Consequently, in deciding motions for

appointment of lead plaintiff, the Court should limit its inquiry to the typicality and adequacy

prongs of Rule 23(a), and defer examination of the remaining requirements until the lead

plaintiff moves for class certification. *See Lax v. First Merchants Acceptance Corp.*, 1997 U.S.

Dist. LEXIS 11866, 1997 WL 461036 at *6 (N.D. Ill. Aug. 6, 1997) (Eve, J.) ("'[a] wide-ranging

analysis under Rule 23 is not appropriate and should be left for consideration of a motion for

class certification. This inquiry, therefore, focuses on ... typicality and adequacy.'") *citation omitted.* Messrs. Koontz and Margaritis are typical of the class they seek to represent as Lead Plaintiff and will more than adequately protect their interests.

Typicality exists where the movant's claims, "arise[] from the same event or practice or course of conduct that gives rise to the claims of class members and his or her claims are based on the same legal theory." *Rosario* 963 F.2d at 1018. The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims and factual allegations must be. *See De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983). Movants satisfy the typicality requirement because, just like all other class members, they "(1) purchased [CEC] securities during the purported class period; (2) paid prices allegedly inflated because of claimed false and misleading statements by the defendants; and (3) thereby allegedly suffered damages" *Johnson v. Tellabs, Inc.,* 214 F.R.D. 225, 228 (N.D. Ill. 2002) (Eve, J.)

In addition to demonstrating typicality, under Rule 23(a)(4) the lead plaintiff must also "fairly and adequately protect the interests of the class." The standard for adequacy of representation under Rule 23(a)(4) is met where: "(1) [movants'] claims are not antagonistic or in conflict with those of the class; (2) [movants have] sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) [movants are] represented by competent, experienced counsel who be able to prosecute the litigation vigorously." *Id.* at 228-229.

Here, Messrs. Koontz and Margaritis are adequate to represent the class because their interests are aligned with the interests of the class because both suffered from artificial inflation of the price of CEC securities and would benefit from the same relief. There is no evidence of antagonism between the Movants and the class, as their interests are aligned. Having lost over

$52,300 on their purchases of CEC stock during the Class Period, Movants are strongly

motivated to vigorously prosecute this action to obtain the best recovery for the class. In

addition, as shown below, the Movants' proposed Lead and Liaison Counsel are highly

qualified, experienced and able to conduct this complex litigation in a professional manner.

Thus, Messrs. Koontz and Margaritis satisfy the *prima facie* showing of the typicality and

adequacy requirements of Rule 23 for the purposes of this motion.

## POINT III

### THE COURT SHOULD APPROVE MESSRS. KOONTZ AND MARGARITIS' SELECTION OF LEAD AND LIAISON COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject

to this Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). This Court should not disturb the

lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15

U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). Because Messrs. Koontz and Margaritis have selected and

retained counsel experienced in litigating securities fraud class actions with the resources to

prosecute this action to the greatest recovery possible for the class, their choice of Lead Counsel

should be approved.

Messrs. Koontz and Margaritis have selected the law firm of Milberg Weiss to serve as

Lead Counsel and Miller Faucher to serve as Liaison Counsel to the class. Milberg Weiss and

Miller Faucher possess extensive experience litigating securities class actions and have

successfully prosecuted numerous securities class actions on behalf of injured investors. *See* Ex.

D-E. *See also Johnson*, 214 F.R.D. at 229-230 (appointing Milberg Weiss as Lead Counsel and

Miller Faucher as Liaison Counsel pursuant to the PSLRA.).

Milberg Weiss and Miller Faucher bring to this action a securities litigation team

consisting of attorneys, investigators, and forensic accountants who have repeatedly

- 11 -

demonstrated their willingness to undertake the painstaking process of unraveling accounting irregularities and improper transactions, all of whom are able to devote substantial resources to the prosecution of this action. Thus, the Court may be assured that in the event this motion is granted, the members of the class will receive the highest caliber of legal representation available from Milberg Weiss as Lead Counsel and Miller Faucher as Liaison Counsel.

## CONCLUSION

For all the foregoing reasons, Messrs. Koontz and Margaritis respectfully request that the Court: (1) consolidate the Related Actions; (2) appoint them as lead plaintiff; and (3) approve their selection of Milberg Weiss to serve as Lead Counsel and Miller Faucher to serve as Liaison Counsel.

Dated: February 9, 2004

Respectfully submitted,

**MILLER FAUCHER and CAFFERTY LLP**

Marvin A. Miller
Jennifer W. Sprengel
Anthony F. Fata
30 North LaSalle Street
Suite 3200
Chicago, IL 60602
(312) 782-4880

**Proposed Liaison Counsel**

**MILBERG WEISS BERSHAD HYNES & LERACH LLP**
Steven G. Schulman
Peter E. Seidman
Andrei V. Rado
One Pennsylvania Plaza
New York, NY 10119-0165
(212) 594-5300
(212) 868-1229
**Proposed Lead Counsel**

- 12 -

**LAW OFFICE OF ALFRED G. YATES, JR., P.C.**
Alfred G. Yates
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA  15219-1649
(412) 391-5164

**Attorneys for plaintiff Daniel Taubenfeld**

# EXHIBIT  A

*Business Wire December 10, 2003 Wednesday*

Copyright 2003 Business Wire, Inc.
Business Wire

December 10, 2003 Wednesday

**DISTRIBUTION:** Legal Writers; Business Editors

**LENGTH:** 721 words

**HEADLINE:** Milberg Weiss Announces The Filing Of A **Class Action** Suit Against **Career Education** Corporation on Behalf of Investors

**DATELINE:** NEW YORK, Dec. 10, 2003

**BODY:**
Milberg Weiss announces that a **class action** lawsuit has been commenced against **Career Education** Corporation ("CEC" or the "Company"), John M. Larson (CEO, Pres. and Chairman) and Patrick K. Pesch (CFO). The lawsuit, civil action number 03-CV-8884, is pending in the United States District Court for the Northern District of Illinois, Eastern Division. The lawsuit was filed on behalf of purchasers of CEC (NASDAQ:CECO) securities, who were damaged thereby, during the period between April 22, 2003 and December 2, 2003, inclusive (the "Class Period"). A copy of the complaint can be obtained from the court and is available on our website at: http://www.milberg.com/cases/careereducation/

The complaint charges CEC and certain of its officers and directors with violations of the Securities Exchange Act of 1934. The complaint alleges that **Career Education** publicly touted its business and financial performance, the performance of its stock price and its industry leading position as reasons for why investors should purchase its stock. These, and other statements particularized in the complaint, were materially false and misleading because they failed to disclose that CEC had been regularly falsifying student records in order to increase graduation rates and enrollment, conceal problems that could have threatened the accreditation of its schools, and generally, to allow it to increase its profitability. On December 3, 2003, the market learned that the former registrar of CEC's Brooks Institute of Photography in Santa Barbara, California alleged, in a complaint filed with an accreditation agency, that the school falsified student records to ensure that the school passed inspections by accreditation auditors and to increase enrollment. In reaction to this announcement, CEC's stock price plummeted, falling from $54.76 per share on December 2, 2003 to $39.48 on December 3, 2003, a one-day drop of 28%, on trading volume of 18.2 million shares — more than nine times the Company's three-month daily average. Throughout the Class Period, **Career Education** insiders, including the individual defendants, sold a total of 1.7 million (split-adjusted) shares of **Career Education** common stock at artificially inflated prices, reaping gross proceeds in excess of $69 million.

If you bought the securities of CEC Corp. between April 22, 2003 and December 2, 2003 and sustained damages, you may, no later than February 9, 2004 request that the Court appoint you as lead plaintiff. A lead plaintiff is a representative party that acts on behalf of other class members in directing the litigation. In order to be appointed lead plaintiff, the Court must determine that the class member's claim is typical of the claims of other class members, and that the class member will adequately represent the class. Under certain circumstances, one or more class members may together serve as "lead plaintiff." Your ability to share in any recovery is not, however, affected by the decision of whether or not to serve as a lead plaintiff. You may retain Milberg Weiss Bershad Hynes & Lerach LLP, or other counsel of your choice, to serve as your counsel in this action.

Milberg Weiss Bershad Hynes & Lerach LLP (http://www.milberg.com) is a 190-lawyer firm with offices in New York City, San Diego, San Francisco, Los Angeles, Boca Raton, Philadelphia and Seattle, and is active in major litigations pending in federal and state courts throughout the United States. Milberg Weiss has taken a leading role in many important actions on behalf of defrauded investors, consumers, and others, and has been responsible for more than $20 billion in aggregate recoveries. Please contact the Milberg Weiss website for more information about the firm. If you wish to discuss this action with us, or have any questions concerning this notice or your rights and interests with regard to the case, please contact the following attorneys:

Steven G. Schulman, Peter E. Seidman or Andrei V. Rado
One Pennsylvania Plaza, 49th fl.
New York, NY, 10119-0165
Phone number: 800-320-5081
Email: CECcage@milberg.com
Website: http://www.milberg.com

CONTACT: Milberg Weiss
G. Schulman, Peter E. Seidman or Andrei V. Rado
800-320-5081

URL: http://www.businesswire.com

**LOAD-DATE:** December 11, 2003

Source: News & Business > / ... / > Wire Service Stories [i]
Terms: career education and class action and date(geq (12/09/03) and leq (12/12/03)) (Edit Search)
View: Full
Date/Time: Monday, February 9, 2004 - 9:06 AM EST

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT B

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I _Jeffrey W Koontz_, declare the following as to the claims asserted or to be asserted, under the federal securities laws:

1.      I have reviewed the Career Education Corporation (NASDAQ:CECO) complaint prepared by Milberg Weiss Bershad Hynes & Lerach LLP, whom I designate as my counsel in this action for all purposes.

2.      I did not acquire Career Education Corporation (NASDAQ:CECO) stock at the direction of plaintiff's counsel or in order to participate in any private action under federal securities laws.

3.      I am willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial

4.      I will not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as lost wages and travel expenses directly related to the class representation, as ordered or approved by the court pursuant to law.

5.      I have not sought to serve or served as a representative party for a class in an action under the federal securities laws with in the past three years, except: _N/A_.

6.      I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is unaffected by my decision to serve as a representative party.

7.      Since April 22, 2003 I have made the following transactions in Career Education Corporation NASDAQ:CECO and will provide records of those transactions upon request:

| No. of Shares | Buy / Sell | Trade Date | Price Per Share |
|---------------|------------|------------|-----------------|
|               |            |            |                 |
|               | see attached |          |                 |
|               |            |            |                 |
|               |            |            |                 |

Please use and attach additional pages if necessary.

I declare under penalty of perjury that the foregoing is true and correct

Executed this _6_ day of _January_, 2004

_Jeffrey W. Koontz_
Print Name

_____
Signature

| No. of Shares | Buy / Sell | Trade Date | Price Per Share |
|---|---|---|---|
| 300 | Buy | 11/18/2003 | 47.800 |
| 300 | Buy | 11/18/2003 | 47.650 |
| 800 | Buy | 11/18/2003 | 47.640 |
| 100 | Buy | 11/18/2003 | 47.640 |
| 500 | Sell | 12/4/2003 | 36.030 |
| 700 | Sell | 12/4/2003 | 36.030 |
| 300 | Sell | 12/4/2003 | 36.030 |
| 300 | Buy | 12/8/2003 | 39.490 |
| 800 | Buy | 12/8/2003 | 39.490 |
| 100 | Buy | 12/8/2003 | 39.490 |
| 200 | Buy | 12/8/2003 | 39.390 |
| 100 | Buy | 12/8/2003 | 39.352 |
| 700 | Sell | 12/15/2003 | 38.000 |
| 400 | Sell | 12/15/2003 | 38.000 |
| 400 | Sell | 12/15/2003 | 38.000 |

1/6/04

# CERTIFICATION OF PROPOSED LEAD PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

JAN 26 2004

I _____Nicholas J. Margaritis_____, declare the following as to the claims asserted or to be asserted, under the federal securities laws:

1. I have reviewed the Career Education Corporation (NASDAQ:CECO) complaint prepared by Milberg Weiss Bershad Hynes & Lerach LLP, whom I designate as my counsel in this action for all purposes.

2. I did not acquire Career Education Corporation (NASDAQ:CECO) stock at the direction of plaintiff's counsel or in order to participate in any private action under federal securities laws.

3. I am willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial

4. I will not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as lost wages and travel expenses directly related to the class representation, as ordered or approved by the court pursuant to law.

5. I have not sought to serve or served as a representative party for a class in an action under the federal securities laws with in the past three years, except: _None_.

6. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is unaffected by my decision to serve as a representative party.

7. Since April 22, 2003 I have made the following transactions in Career Education Corporation NASDAQ:CECO and will provide records of those transactions upon request:

| No. of Shares | Buy / Sell | Trade Date | Price Per Share |
|---|---|---|---|
| 5,000 | Buy | 11/26/2003 | 50.15 |
| 164 | sell | 11/28/2003 | 51.41 |
| 3,300 | sell | 12/03/2003 | 41.00 |
| | | | |

Please use and attach additional pages if necessary.

I declare under penalty of perjury that the foregoing is true and correct

Executed this _30_ day of _January_, 2004

_____
Nicholas J. Margaritis
Print Name

_____
Signature

MWBHL—NY

# EXHIBIT   C

Class Period: 1/1/03-12/2/03

Career Education Corporation (Nasdaq:CECO)

Hold price: $44.1052

| PLAINTIFF | PURCHASE TRANSACTIONS | | | | SALES TRANSACTIONS | | | | SHARES HELD | ESTIMATED VALUE (2) | ESTIMATED LOSSES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | DATE | SHARES | SHARE COST | PURCHASE AMOUNT | DATE | SHARES | SHARE PRICE | SALES AMOUNT | | | |
| Jeffrey Koontz | 1/18/03 | 300.00 | 47.8000 | 14,340.00 | 12/9/03 | 500.00 | 36.0300 | 18,015.00 | -200.00 | (8,821.04) | (5,146.04) |
| Jeffrey Koontz | 1/18/03 | 300.00 | 47.5500 | 14,295.00 | 12/9/03 | 700.00 | 36.0300 | 25,221.00 | -400.00 | (17,642.08) | (6,716.08) |
| Jeffrey Koontz | 1/18/03 | 300.00 | 47.6400 | 30,112.00 | 12/9/03 | 300.00 | 36.0300 | 10,809.00 | 500.00 | 22,052.60 | (5,250.40) |
| Jeffrey Koontz | 1/18/03 | 100.00 | 47.6400 | 4,764.00 | | | | 0.00 | 100.00 | 4,410.52 | (353.48) |
| Jeffrey Koontz Total | | 1,500.00 | | 71,511.04 | | 1,500.00 | | 54,045.80 | 0.00 | 0.00 | (17,466.08) |
| Margaritis, Nicholas Jr. | 11/26/03 | 5,000.00 | 50.1500 | 254,750.00 | 11/21/03 | 764.00 | 51.4100 | 39,277.24 | 4,236.00 | 186,829.63 | (24,643.13) |
| Margaritis, Nicholas Jr. | | | | 0.00 | 12/2/03 | 3,300.00 | 41.0000 | 135,300.00 | -3,300.00 | (145,547.16) | (10,247.16) |
| Margaritis, Nicholas Jr. Total | | 5,000.00 | | 254,750.00 | | 4,064.00 | | 174,577.24 | 936.00 | 41,282.47 | (34,890.29) |
| Grand Total | | 6,500.00 | | 326,261.04 | | 5,564.00 | | 228,623.04 | 936.00 | 41,282.47 | (52,356.29) |

# EXHIBIT  D

# Milberg Weiss Bershad Hynes & Lerach LLP

## THE FIRM'S PRACTICE, THE FIRM'S ACHIEVEMENTS AND ATTORNEYS' BIOGRAPHIES

MILBERG WEISS BERSHAD HYNES & LERACH LLP is a 190-lawyer firm with main headquarters in New York City and various offices nationwide (*www.milberg.com*). The firm that Melvyn I. Weiss and Lawrence Milberg founded in 1965 has grown to become the nation's largest law firm whose practice is focused on class action litigation. Its growth has come not through acquisition of other firms, but rather by attracting experienced attorneys, some who left partnerships at other firms, others from federal, state and local law enforcement and regulatory agencies. The firm has been actively engaged in commercial litigation, emphasizing securities, consumer, insurance, healthcare, corporate, human rights, employment discrimination and antitrust class actions, for over 35 years.

The firm's reputation for excellence has been recognized on repeated occasions by courts that have appointed it to major positions in complex multi-district or consolidated litigations. In short, Milberg Weiss has successfully prosecuted thousands of class action lawsuits, has taken a lead role in numerous complex litigations on behalf of defrauded investors, consumers and companies, as well as victims of World War II human rights violations, and has been responsible for more than $30 billion in recoveries.

## JUDICIAL COMMENDATIONS

Milberg Weiss has been commended by countless judges all over the country for the quality of its representation in class action lawsuits. In *Transamerica*, Judge Danielson made it a point to comment on the professionalism of Milberg Weiss:

> It would be hard to imagine what question I could come up with that I haven't already seen the information that I needed in the submissions that have been made to this Court. I can't remember anything so thoroughly and professionally handled in the 20-some odd years that I've been involved in the law. It is interesting to see law practiced honorably. And I think all of the lawyers who have involved themselves in this case can be very proud of their profession.

<u>See</u> *Gordon v. Transamerica Occidental Life Ins. Co.*, Hearing Transcript dated June 26, 1997, at 39:3-12.

In *Prudential*, in approving the settlement of a nationwide class action against a life insurer for deceptive sales practices, Judge Wolin observed:

> [T]he results achieved by plaintiffs' counsel in this case in the face of significant legal, factual and logistical obstacles and formidable opposing counsel, are nothing short of remarkable.
>
> •  •  •
>
> Finally, the standing and professional skill of plaintiffs' counsel, in particular Co-Lead Counsel, is high and undoubtedly furthered their ability to negotiate a valuable settlement and argue its merits before this Court. Several members of plaintiffs' counsel are leading attorneys in the area of class action litigation.

In *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 572, 585-86 (D.N.J. 1997), vacated on other grounds. Milberg Weiss Bershad Hynes & Lerach LLP was co-lead counsel in this litigation. At the Fairness Hearing in Prudential, Judge Wolin stated that "there is <u>no doubt</u> that Class Counsel have prosecuted the interests of the class members with the utmost vigor and expertise." *In re The Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 519 (D.N.J. 1997) (emphasis added).

In *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) Civ 3996 (RWS) (S.D.N.Y.), in an opinion dated November 9, 1998, approving settlements totaling over $1.027 billion, the court commented:

Counsel for the Plaintiffs [Milberg Weiss] are preeminent in the field of class action litigation, and the roster of counsel for Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties in this action achieved.

In approving a $100 million settlement in *In re Prudential Securities Inc. Partnership Litigation*, 912 F. Supp. 97, 101 (S.D.N.Y. 1996), for which Milberg Weiss was one of the lead counsel, Judge Pollack noted that he had "had the opportunity at first hand to observe the quality of plaintiffs' class counsel's representation, both here and in prior complex litigation, and is impressed with the quality of Plaintiffs' Class Counsel."

In his opinion on class certification, Judge Chesler noted:

> The firm of Milberg Weiss Bershad Hynes & Lerach LLP, which is co-lead counsel for the plaintiff, was also counsel for the plaintiff class in the *Prudential* case. Thus, the adequacy of the plaintiff's representation is beyond reproach. Furthermore, the tremendous and unprecedented settlements which the Milberg firm has helped to secure for the plaintiff classes in both this case and the *Prudential* case are a testament to counsel's vigorous pursuit of the class interests.

See *Roy v. The Independent Order of Foresters*, Civ. No. 97-6225 (SRC) (D.N.J. August 3, 1999), at 32.

At the Settlement Hearing in the *Chipcom* litigation, for which Milberg Weiss was counsel, Judge Woodlock remarked:

> [I]t seems to me that the level of legal services, the quality of legal services, the attention to the case on behalf of the plaintiffs, and ultimately plaintiffs' class, was really very high quality and ought to be recognized by an appropriately high percentage figure here.

> Of course, I disagree on the merits of the case. That is not, however, to say that I disagree with the quality of the lawyering or disregarded the quality of the lawyering or thought that the quality of the lawyering was not at the highest level. To the contrary, I thought it was at the highest level and that ought also to be reflected here.

See *Nappo v. Chipcom Corp.*, CA-95-11114-WD (D. Mass.) Settlement Hearing Transcript dated June 26, 1997, at 13-14.

## NOTEWORTHY CLIENTS

In addition to countless individual investors, funds and institutions represented by Milberg Weiss include:

• The City of Birmingham (Ala.) Retirement & Relief Fund. Milberg Weiss is representing the City of Birmingham, Lead Plaintiff in an ongoing federal securities class action against Mattel Corporation.

• SEIU Local 144 Nursing Home Pension Fund and Hotel Front Insurance Fund. Milberg Weiss is representing these combined funds in several securities class actions, including actions against Procter & Gamble Company, The Honeywell Corporation, and Microstrategy, Inc. Proctor and Gamble recently settled for $48 million and MicroStrategy recently settled for $155 million.

• The Dotcom Fund. Milberg Weiss is representing the Dotcom Fund, the Lead Plaintiff in a federal securities class action, against VantageMedCorporation, for selling millions of dollars worth of securities pursuant to a false Registration Statement and Prospectus.

• The Federal Deposit Insurance Corporation. Milberg Weiss represented the FDIC in claims arising out of the failure of the Butcher brothers' Tennessee banking empire. The case ultimately settled for $425 million after a full jury trial as part of a massive global settlement among the FDIC, RTC and Ernst & Whinney.

• The New England Health Care Employees Pension Fund. Milberg Weiss is representing the New England Health Care Employees Pension Fund, the Lead Plaintiff in a securities fraud action against Fruit of the Loom involving accounting fraud and over $70 million worth of insider trading. The firm is also representing the New England Health Care Employees Pension Fund as Lead Plaintiff in a securities fraud action against Newell Rubbermaid, Inc.

- The West Virginia Employer - Teamsters Joint Counsel No. 84 Pension Trust and Locals 175 and 505 Pension Trust. Milberg Weiss has recently represented these Taft-Hartley pension funds as Lead Plaintiff in a several pending securities fraud class actions, including actions against The Clorox Company, America West Holdings Corp. and Lucent Technologies Corp.

- Amalgamated Bank (Longview Fund). Milberg Weiss was recently retained by the Amalgamated Bank to monitor the assets of the Longview Fund and advise and represent the Fund on fraud and corporate governance matters. The Longview Fund is a $4 billion fund invested substantially in U.S. equities and debt instruments.

- ILGWU National Retirement Fund, UNITE Staff Retirement Plan, ILGWU Unit-Eastern States Health & Welfare Fund, ILGWU Death Benefit Fund, ILGWU Escrow Fund and UNITE General Fund. Milberg Weiss is currently monitoring the assets of these six Taft-Hartley pension funds as well as advising them on litigation matters on a case-by-case basis.

- The State of New Jersey Pension Fund. Milberg Weiss was competitively selected by the Treasurer of the State of New Jersey to represent the state's $86 billion pension fund in its securities litigation against Sears Roebuck & Co. New Jersey was recently appointed lead plaintiff and Milberg Weiss lead counsel, after hard-fought motion practice.

- California Public Employees Retirement System. Milberg Weiss has been selected by CalPERS, the nation's largest public investment fund with over $175 billion in assets under management, to serve as outside counsel for securities class action and derivative litigation.

- The New York State and Local Retirement System. Milberg Weiss was selected by former New York State Comptroller H. Carl McCall and current comptroller Alex G. Hevesi to serve as one of three firms acting as special counsel for securities class action and derivative litigation. Milberg Weiss is currently representing the N.Y. State Common Retirement Fund in substantial securities fraud actions against Bayer AG, the Raytheon Corp. and Chubb.

- The cities of San Francisco, Los Angeles, Birmingham (Ala.), and 14 counties in California in connection with claims filed against big tobacco companies for conspiracy to hide the truth regarding the damages related to smoking. In connection with this litigation, Milberg Weiss has also worked closely with the attorneys general of several states, including the State of California.

- The firm represented IBM Corporation with Cravath, Swaine & Moore in class and derivative suits asserted against IBM in New York courts. The derivative litigation has been dismissed and the class litigation was defeated on a motion for summary judgment, thereafter sustained on appeal.

- Milberg Weiss was appointed co-lead counsel to represent institutions and individual purchasers of Oxford Health Plans, Inc. common stock in pursuit of securities fraud actions against the company and certain of its officers and directors. Judge Brieant's decision to appoint as co-lead plaintiffs two institutions and three individual investors, the latter represented by Milberg Weiss, reflected in substantial part the interpretation of the relevant provisions of the Private Securities Litigation Reform Act of 1995 ( PSLRA) advanced by this firm. This matter recently settled in excess of $300 million.

- In addition, the firm has represented individuals, governmental entities and major corporations including CBS Corporation; T.V. Azteca, Mexico's second largest television network; Phar-Mor, Inc., formerly a nationwide discount pharmacy chain, and others in complex financial litigation.

## PROMINENT CASES

• *In re NASDAQ Market-Makers Antitrust Litig.,* MDL 1023 (S.D.N.Y.). Milberg Weiss served as court-appointed co-lead counsel for a class of investors. The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry-wide conspiracy in one of the largest and most important antitrust cases in recent history. After three and one half years of intense litigation, the case was settled for a total of $1.027 billion, the largest antitrust settlement ever. An excerpt from the court's opinion reads:

> Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties to this action achieved.

• *In re Initial Public Offering Securities Litig.,* No. 21 MC 92 (SAS). This litigation consists of 309 class actions involving over 300 IPOs marketed between 1998 and 2000. A proposed settlement between the issuer defendants, their directors and officers will guarantee at least $1 billion dollars to class members from the insurers of the issuers.

• *In re Lucent Technologies Inc. Securities Litig.,* No. 00cv621(AJL). The second largest securities settlement in history provides record compensation of $600 million to aggrieved shareholders who purchased Lucent stock between October 1999 and December 2000.

• *In re American Continental Corp./Lincoln Savings & Loan Sec. Litig.,* MDL 834 (D. Ariz.). Milberg Weiss served as the court-appointed co-lead counsel for a class of persons who purchased debentures and/or stock in American Continental Corp., the parent company of the now-infamous Lincoln Savings & Loan. The suit charged Charles Keating, other insiders, three major accounting firms, three major law firms, Drexel Burnham, Michael Milken and others with racketeering and violations of securities laws. Recoveries totaled $240 million on $288 million in losses. A jury also rendered verdicts of more than $1 billion against Keating and others.

• *Mangini v. RJ Reynolds Tobacco Co., Cal. 4th 1057 (1994),* in this case R.J. Reynolds admitted "the Mangini action, and the way that it was vigorously litigated, was an early, significant and unique driver of the overall legal and social controversy regarding underage smoking that led to the decision to phase out the Joe Camel Campaign."

• *In re Airline Ticket Comm'n Antitrust Litig.,* MDL 1058 (D. Minn.). Milberg Weiss served as co-lead trial counsel on behalf of a class of travel agents alleging that nine major airlines conspired to fix their commission rates. Just prior to trial in September 1996, the case was settled for a total of $86 million.

• *Cordova v. Liggett Group, Inc., et al.,* No. 651824 (CA Super. Ct, San Diego County) and *People v. Philip Morris, Inc., et al.,* No. 980864 (CA Superior Court, San Francisco County), Milberg Weiss, a lead counsel in both these actions, played a key role in these cases which were settled with the attorneys general global agreement with the tobacco industry bringing $26 billion to the State of California as a whole and $12.5 billion to the cities and counties within California.

• *In re Exxon Valdez,* No. A89-095 Civ. (D. Alaska) and *In re Exxon Valdez Oil Spill Litig.,* 3 AN-89-2533 (Alaska Superior Court, Third Judicial Dist). Milberg Weiss is a member of the Plaintiffs' Coordinating Committee and co-chair of Plaintiffs' Law Committee in the massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989. A jury verdict of $5 billion was obtained and is currently on appeal.

• *In re Washington Public Power Supply Sys. Sec. Litig.,* MDL 551 (D. Ariz.). A massive litigation in which Milberg Weiss served as co-lead counsel for a class that obtained settlements totaling $775 million after several months of trial.

• *In re Baldwin United Annuity Litig.,* No. M-21-35 (S.D.N.Y.). Milberg Weiss served as co-lead counsel in this consolidated proceeding on behalf of purchasers of annuities that was settled for over $160 million.

• *Hall v. NCAA* (Restricted Earnings Coach Antitrust Litigation), No. 94-2392-KHV (D. Kan.). The firm was lead counsel and lead trial counsel for one of three classes of coaches in consolidated price-fixing actions against the National Collegiate Athletic Association. On May 4, 1998, the jury returned verdicts in favor of the three classes for more than $67 million.

- *Newman v. Stringfellow* (Stringfellow Dump Site Litigation), No. 165994 MF (Superior Court Riverside County). Milberg Weiss represented more than 4,000 individuals suing for personal injury and property damage arising from their claims that contact with the Stringfellow Dump Site may have caused them toxic poisoning. Settlements totaled approximately $109 million.

- *City of San Jose v. PaineWebber*, No. C- 84-20601(RFP) (N.D. Cal.). Milberg Weiss filed a lawsuit on behalf of the City of San Jose to recover speculative trading losses from its former auditors and 13 brokerage firms. In June 1990, following a six-month trial, the jury returned a verdict for the City, awarding over $18 million in damages plus pre-judgment interest. The City also recovered an additional $12 million in settlements prior to and during the trial.

- *Hicks v. Nationwide*, Case No. 602469 (Superior Court San Diego County). Milberg Weiss represented a class of consumers alleging fraud involving military purchasers of life insurance, in which a jury trial resulted in a full recovery for the class, plus punitive damages.

- *In re Aetna Inc. Sec. Litig.*, MDL No. 1219 (E.D. Pa.). Milberg Weiss served as a co-lead counsel and obtained a pretrial settlement of $82.5 million in this securities fraud class action.

- *In re Nat'l Health Laboratories Sec. Litig.*, No. CV-92-1949-RBB (S.D. Cal.). Milberg Weiss served as co-lead counsel and obtained a pretrial settlement of $64 million in this securities fraud class action.

- *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW (N.D. Cal.). Milberg Weiss served as lead counsel and after several years of litigation obtained a $100 million jury verdict in this securities fraud class action. The $100 million jury verdict was later upset on post-trial motions, but the case was settled favorably to the class.

- *In re Nat'l Med. Enter. Sec. Litig.*, No. CV-91-5452-TJH (C.D. Cal.). Milberg Weiss served as co-lead counsel and recovered $60.75 million in this securities fraud class action.

- *FDIC v. Ernst & Whinney* (E.D. Tenn.). Milberg Weiss represented the FDIC (Federal Deposit Insurance Corporation) which sought to recover $275 million of losses arising out of the failure of the Butcher brothers Tennessee banking empire. The case settled after a full trial as part of a massive "global" settlement between the FDIC and Ernst & Whinney.

- *In re Nucorp Energy Sec. Litig.*, MDL 514 (S.D. Cal.). Milberg Weiss served as co-lead counsel in this consolidated class action and obtained settlements totaling $55 million.

- *In re U.S. Fin. Sec. Litig.*, MDL 161 (S.D. Cal.). Milberg Weiss acted as chairman of the Plaintiffs' Steering Committee and achieved a pretrial settlement of over $50 million.

- *In re LILCO Sec. Litig.*, No. 84 Civ. 0588 (LDW) (E.D.N.Y.). Milberg Weiss served as lead counsel and recovered $48.5 million for shareholders on the eve of the trial.

- *Barr v. United Methodist Church*, Case No. 404611 (Superior Court San Diego County). Milberg Weiss served as lead and trial counsel in this class action on behalf of elderly persons who lost their life savings when a church-sponsored retirement home that had sold them prepaid life-care contracts went bankrupt. After four years of intensive litigation – three trips to the United States Supreme Court and five months of trial – plaintiffs obtained a settlement providing over $40 million in benefit to the class members. In approving that settlement, Judge James Foucht praised the result as "a most extraordinary accomplishment" and noted that it was the "product of the skill, effort and determination of plaintiffs' counsel."

- *Grobow v. Dingman* (The Henley Litigation), Case No. 575076 (Superior Court San Diego County). Milberg Weiss served as co-lead counsel and obtained $42 million derivatively on behalf of The Henley Group, Inc.

- *In re Itel Sec. Litig.*, No. C-79-2168A-RPA (N.D. Cal.). Milberg Weiss served as co-lead counsel in this securities class action that was settled for $40 million.

- *In re Fin. Corp. of America*, No. CV-84-6050-TJH(Bx) (C.D. Cal.). Milberg Weiss served as co-lead counsel and obtained a settlement of $41 million.

- *In re Oak Indus. Sec. Litig.*, No. 83-0537-G(M) (S.D. Cal.). Milberg Weiss served as co-lead counsel in this case and obtained a settlement for $33 million.

- *In re Wickes Cos. Sec. Litig.*, MDL 513 (S.D. Cal.). Milberg Weiss served as liaison counsel in this con-

solidated securities law class action that was settled for $32 million.

• *Kaplan v. Chase Manhattan Corp.*, No. 9611-85 (N.Y. Sup. Ct.). Milberg Weiss served as co-lead counsel in this derivative case where the firm obtained $32.5 million for the plaintiffs.

• *In re Pepsico Sec. Litig.*, No. 82 Civ. 8403(ADS) (S.D.N.Y.). Milberg Weiss served as co-lead counsel in this case and obtained a pretrial settlement of $21.5 million.

• *In re Northwest Indus. Sec. Litig.*, Nos. 82-C0658 & 82-C1599 (N.D. Ill.). Milberg Weiss served as co-lead counsel in this case and obtained an $18 million jury verdict.

• *Weinberger v. Shumway* (The Signal Companies, Inc.), Case No. 547586 (Superior Court San Diego County). Milberg Weiss served as co-lead counsel in this derivative litigation challenging executive "golden parachute" contracts, and obtained a settlement of approximately $23 million.

• *In re Warner Communications Sec. Litig.*, No. 82 Civ. 8288(JFK) (S.D.N.Y.). Milberg Weiss served as co-lead counsel in this case and obtained a settlement of $18 million.

• *Rosenfeld v. Leach*, Case No. 257916 (Superior Court San Mateo County). Milberg Weiss served as lead counsel in this case challenging an attempt to "go private." The case settled just before trial for $18 million.

• *In re Viatron Computer Sys. Corp. Litig.*, MDL 138- T (D. Mass.). Milberg Weiss served as lead and trial counsel in this case. A jury verdict was returned establishing the liability of a "Big Eight" accounting

firm and aggregate settlements totaled over $15 million.

• *In re Seafirst Sec. Litig.*, No. C-83-771-R (W.D. Wash.). Milberg Weiss served as co-lead counsel in this class action and obtained a pretrial settlement of $13.6 million.

• *In re Waste Mgmt. Sec. Litig.*, No. 83-C2167 (N.D. Ill.). Milberg Weiss served as co-lead counsel in this case and obtained a pretrial settlement of $11.5 million.

• *In re Informix Corp. Sec. Litig.*, No. C-97-1289-CRB (N.D. Cal.). Milberg Weiss served as co-lead counsel in this case and obtained a pretrial settlement of $142 million.

• *In re IDB Communications Group, Inc. Sec. Litig.*, No. CV-94-3618 (C.D. Cal.). Milberg Weiss served as co-lead counsel in this case and obtained a pretrial settlement of $75 million.

• The firm was lead counsel in *In re The Prudential Ins. Co. Sales Practice Litig.* Civ. No. 95-4707 (AMW) (D.N.J.), a landmark case which contained securities claims as well as common law claims, and which recently settled under an innovative structure that will result in the payment of over $1 billion to Prudential policyholders. The total recovery exceeds $4 billion. Milberg Weiss has led the litigation of numerous other class actions involving alleged churning practices by other insurance companies and their agents, recovering billions of dollars in the past few years. The settlement was approved in an extensive, comprehensive decision handed down by the Third Circuit. 148 F.3d 283 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999).

## PRECEDENT-SETTING DECISIONS

Milberg Weiss has consistently been a leader in developing the law for investors under the federal securities laws. Since January 1994, the firm has represented individual and institutional plaintiffs in well over 500 class action securities litigations including many under the PSLRA. In most of those cases, Milberg Weiss has served as lead or co-lead counsel. The firm has also been responsible for establishing many important precedents, including:

• *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000). The firm was lead counsel in this seminal securities fraud case in which the Second Circuit undertook an extensive analysis of the statutory text and the legislative history of the PSLRA and pre-existing Second Circuit case law. Among other things, the Second Circuit held that the PSLRA's pleading standard for scienter was largely equivalent to the pre-existing Second Circuit standard and vacated the district court's dismissal which sought to impose a higher standard for pleading scienter under the PSLRA. The Second Circuit also rejected any general requirement that plaintiffs' confidential sources must be disclosed to satisfy the PSLRA's newly-enacted particularity requirements.

• *In re Salomon Inc. Shareholders Derivative Litig.* 68 F.3d 554 (2d Cir. 1995), in which the Second Circuit affirmed the district court's holding that derivative federal securities claims against defendants would not be referred to arbitration pursuant to the arbitration provisions of the Rules of the New York Stock Exchange, but would be tried in district court. Shortly thereafter, the case settled for $40 million; among the largest cash recoveries ever recorded in a derivative action.

• *In re Advanta Corp. Securities Litig.*, 180 F.3d 525 (3d Cir. 1999), the firm successfully argued that, under the PSLRA, the requisite scienter is pled by making an adequate showing that the defendants acted knowingly or with reckless disregard for the consequences of their actions. As urged by this firm, the Third Circuit specifically adopted the Second Circuit's scienter pleading standard for pleading fraud under the PSLRA.

• In *Berry v. Valence Tech., Inc.,* [1999 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 90,466 (9th Cir. Apr. 29, 1999), the Ninth Circuit held that negative articles in the financial press do not cause the one-year "inquiry notice" statute of limitations to run, and indicated possible acceptance of an "actual knowledge" standard that would greatly extend the statute of limitations for victims of securities fraud.

• In *Shaw v. Digital Equip. Corp., et al.,* 82 F.3d 1194 (1st Cir. 1996), the First Circuit remanded plaintiffs' action after affirming, in part, Milberg Weiss' position that in association with the filing of a prospectus related to the issuance of securities, a corporate-issuer must disclose intra-quarter, materially adverse changes in its business, if such adverse changes constitute "material changes" the disclosure of which is required pursuant to the Securities Act of 1933.

• *In re Carter-Wallace, Inc., Sec. Litig.,* 150 F.3d 153 (2d Cir. 1998), in which plaintiffs' securities complaint was upheld in substantial part, the Court ruled that advertisements made by a drug company are not, as a matter of law, precluded from being made "in connection with" a securities transaction as required by the Securities Exchange Act of 1934.

• In *Hunt v. Alliance North American Government Income Trust,* 159 F.3d 723 (2d Cir. 1998), the Second Circuit reversed the district court's ruling, which denied plaintiffs a cause of action against defendants for failing to disclose that the Trust was unable to utilize proper "hedging" techniques to insure against risk of loss. In the Court's view, taken together and in context, the Trust's representations would have misled a reasonable investor.

• *Kamen v. Kemper Fin. Serv.,* 500 U.S. 90 (1991). The Supreme Court upheld the right of a stockholder of a mutual fund to bring a derivative suit without first making a pre-suit demand.

• *Diamond Multimedia Sys., Inc. v. Superior Court (Pass),* 19 Cal. 4th 1036 (1999). The California Supreme Court held that the broad anti-manipulation provisions of the California state securities laws provide a remedy for out-of-state investors who are damaged by manipulative acts committed by defendants in California.

• *Mangini v. R.J. Reynolds Tobacco Co.,* 7 Cal. 4th 1057, cert. denied, 513 U.S. 1016 (1994). The California Supreme Court upheld allegations that a cigarette manufacturer committed an unlawful business practice by targeting minors with its advertising, rejecting the manufacturer's contention that such an

action was preempted by health-based federal ciga-rette labeling laws.

• *Gohler v. Wood*, 919 P.2d 561 (Utah 1996). The Utah Supreme Court held that investors need not plead or prove "reliance" on false or misleading statements to state a claim under a state law pro-hibiting misleading statements in connection with the sale of a security.

• *Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1998). Cooper is the leading Ninth Circuit precedent on pleading accounting fraud with particularity. The court held that plaintiffs stated claims against a company, its independent auditors, and underwriters for allegedly engaging in a scheme to defraud involving improper revenue recognition.

• *McGann v. Ernst & Young*, 102 F.3d 390 (9th Cir. 1996), *cert. denied*, 520 U.S. 1181 (1997). McGann is a leading federal appellate precedent interpreting Securities Exchange Act §10(b)'s provision prohibiting manipulative or deceptive conduct "in connection with" the purchase or sale of a security. The Court rejected contentions that auditors could not be liable if they participated in no securities transactions. Rather an accounting firm is subject to liability if it prepares a fraudulent audit report that it knows its client will include the report in an SEC filing.

• *Provenz v. Miller*, 102 F.3d 1478 (9th Cir. 1996), cert. denied, 118 S. Ct. 48 (1997). In Provenz the Ninth Circuit reversed a district court's entry of sum-mary judgment for defendants in an accounting-fraud case. The case is a leading federal appellate precedent on the evidence required to prove fraudu-lent revenue recognition.

• *Knapp v. Ernst & Whinney*, 90 F.3d 1431 (9th Cir. 1996). The Ninth Circuit affirmed a jury verdict entered for stock purchasers against a major accounting firm.

• *Warshaw v. Xoma Corp.*, 74 F.3d 955 (9th Cir. 1996). Warshaw is a leading federal appellate prece-dent on pleading falsity in securities class actions – sustaining allegations that a pharmaceutical compa-ny misled securities analysts and investors regarding the efficacy of a new drug and the likelihood of FDA approval. The court holds that a company may be liable to investors if it misled securities analysts.

• *Fecht v. Price Co.*, 70 F.3d 1078 (9th Cir. 1995), cert. denied, 517 U.S. 1136 (1996). Fecht is another leading precedent on pleading falsity with particu-larity. It sustained allegations that a retail chain's

positive portrayal of its expansion program was mis-leading in light of undisclosed problems that caused the program to be curtailed. The Ninth Circuit held that investors may draw on contemporaneous condi-tions – such as disappointing results and losses in new stores – to explain why a company's optimistic statements were false and misleading.

• *In re Software Toolworks Sec. Litig.*, 50 F.3d 615 (9th Cir. 1995). In Software Toolworks, the Ninth Circuit reversed the summary judgment entered for defendants, including a company and top insiders, its independent auditors, and underwriters. Among other things, the court held that defendants could be liable for their role in drafting a misleading letter sent to the SEC on a corporate defendant's attorney's letterhead.

• *Kaplan v. Rose*, 49 F.3d 1363 (9th Cir. 1994), *cert. denied*, 516 U.S. 810 (1995). The court reversed entry of summary judgment for defendants because plain-tiff investors presented sufficient evidence for a jury to hold that a medical device did not work as well as defendants claimed.

• *In re Wells Fargo Sec. Litig.*, 12 F.3d 922 (9th Cir. 1993), *cert. denied*, 513 U.S. 917 (1994). Wells Fargo is a leading federal appellate decision on pleading accounting fraud, sustaining investors' allegations that a bank misrepresented the adequacy of its loan-loss reserves.

• *In re Apple Computer Sec. Litig.*, 886 F.2d 1109 (9th Cir. 1989), *cert. denied*, 496 U.S. 943 (1990). The Ninth Circuit held that investors could proceed to trial on claims that a company's representations about its new disk drive were misleading because they failed to disclose serious technical problems.

• *Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985). The Second Circuit reversed the district court's dis-missal of a securities fraud complaint, in an important opinion clarifying the "fraud" pleading requirements of Federal Rules of Civil Procedure, Rule 9(b).

• *Cowin v. Bresler*, 741 F.2d 410 (D.C. Cir. 1984). The Court of Appeals reversed the lower court's dis-missal of the complaint. The firm had sought the extraordinary remedy of the appointment of a receiv-er over the affairs of a public company due to the highly specific allegations of fraud, dishonesty and gross mismanagement of the corporation's control-ling shareholders.

• *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873 (9th Cir.), *cert. denied*, 469 U.S. 932 (1984).

The Ninth Circuit upheld an investor's right to pursue a class action against an accounting firm, adopting statute of limitation rules for §10(b) suits that are favorable to investors.

• *Hasan v. CleveTrust Realty Investors,* 729 F.2d 372 (6th Cir. 1984). The Court of Appeals very strictly construed, and thus narrowed, the ability of a "special litigation committee" of the board of a public company to terminate a derivative action brought by a shareholder.

• *Fox v. Reich & Tang, Inc.,* 692 F.2d 250 (2d Cir. 1982), *aff'd sub nom, Daily Income Fund, Inc. v. Fox,* 464 U.S. 523 (1984). The court held that a derivative action to recover excessive advisory fees may be brought on behalf of an investment company without any prior demand on the board.

• *Rifkin v. Crow,* 574 F.2d 256 (5th Cir. 1978). The Fifth Circuit reversed an order granting summary judgment for defendants in a §10(b) case, paving the way for future acceptance of the "fraud-on-the -market" rationale in the Fifth Circuit.

• *Heit v. Weitzen,* 402 F.2d 909 (2d Cir. 1968), *rev'g,* 260 F. Supp. 598 (S.D.N.Y. 1966). The court held that liability under §10(b) of the Securities Exchange Act extends to defendants who were not in privity with the named plaintiffs or the class represented by the named plaintiffs.

• *Blackie v. Barrack,* 524 F.2d 891 (9th Cir. 1975), *cert. denied,* 429 U.S. 816 (1976). This is the seminal appellate decision on the use of the "fraud-on-the-market" theory, allowing investors who purchase stock at artificially inflated prices to recover even if they were personally unaware of the false and misleading statements reflected in the stock's price. The court stated that class actions are necessary to protect the rights of defrauded purchasers of securities.

• *In re NASDAQ Market-Makers Antitrust Litig.,* 169 F.R.D. 493 (S.D.N.Y. 1996). The court certified a class of millions of investors over defendants' strenuous objections.

• *Bershad v. McDonough,* 300 F. Supp. 1051 (N.D. Ill. 1969), *aff'd,* 428 F.2d 693 (7th Cir. 1970). The plaintiff obtained summary judgment for a violation of §16(b) of the Securities Exchange Act in which the transaction was structured by the defendants to look like a lawful option. The decision has been cited frequently in discussions as to the scope and purpose of §16(b).

• *Lazar v. Hertz Corp.,* 143 Cal. App. 3d 128 (1983). The Court of Appeal ordered a consumer class certified in an opinion that significantly broadens the right of injured consumers to bring class actions.

• *Barr v. United Methodist Church,* 90 Cal. App. 3d 259, *cert. denied,* 444 U.S. 973 (1979). The Court of Appeal rejected constitutional defenses to an action for civil fraud and breach of contract by religiously affiliated defendants.

ADDITIONALLY, IN THE CONTEXT OF SHAREHOLDER DERIVATIVE ACTIONS, Milberg Weiss has been at the forefront of protecting shareholders' investments by causing important changes in corporate governance as part of the global settlement of such cases. Three recent cases in which such changes were made include:

• *In re Marketspan Corporate Shareholder Litig.,* CV No. 98-15884 (N.Y. Sup. Ct.) (settlement agreement required modifications of corporate governance structure, changes to the audit committee and changes in compensation awards and the nominating committee);

• *Teachers' Retirement Sys. of Louisiana v. Occidental Petroleum Corp.,* CV No. BC185009 (Ca. Sup. Ct. 1998) (as part of the settlement, corporate governance changes were made to the composition of the company's Board of Directors, the company's Nominating Committee, Compensation Committee and Audit Committee); and

• *Abramsky, et al., v. Computer Sciences Corp.,* CV No. 98-00306-JBR(RLH) (D. Nev. 1998) (significant changes to the company's by-laws and governance procedures to enhance shareholder voting rights and the role of outside directors).

# Milberg Weiss Bershad Hynes & Lerach LLP

## THE FIRM'S PARTNERS

**M**ELVYN I. WEISS received a Bachelor's degree in accounting from Baruch College of the City College of New York in 1957, and a J.D. degree from New York University School of Law in 1959. He was admitted to the Bar of the State of New York in 1960 and is presently a member of the Bar of the United States District Court in the Eastern and Southern Districts of New York, the United States Court of Appeals for the Second, Third, Fifth, Sixth, Seventh, Eighth and Ninth Circuits, and the United States Supreme Court.

Mr. Weiss served as co-chair of the American Bar Association's Litigation Section Class and Derivative Action Committee. He served on that Section's special Federal Rule 23 Revision Study Committee and for six years on the Committee on Corporate Laws of the Corporation and Banking Section. He is the author of "Tender Offers and Management Responsibility," 23 N.Y. L. Rev. 445 (1978), and has authored course materials for the Practising Law Institute's seminars on "Class Actions," "Accountants' Liability," "New Trends in Securities Litigation," "Counseling the Accountant" and prosecuting insurance policyholder litigation. He has lectured throughout the country and Canada in forums conducted by the Practising Law Institute and other institutes and as guest lecturer at New York University School of Law, Hofstra University in New York, Duke Law School and at the Salzburg seminars. He has addressed several accounting associations such as the New York State Society of C.P.A.'s, the National Association of Accountants and National Association of Internal Auditors. He has participated as a panelist in programs for the North American Association of State Securities Administrators and has been frequently quoted as a leading authority on shareholder and consumer rights in the national media. Mr. Weiss is a Fellow of the American College of Trial Lawyers. Mr. Weiss is a trustee of N.Y.U. School of Law and the recipient of its Vanderbilt Medal awarded annually to an outstanding alumni. He has also testified before congressional committees on securities litigation and accountants' liability.

Mr. Weiss's expertise has been recognized on numerous occasions by courts which have appointed him to positions of control in complex litigations. Among the more prominent of these are the Drexel/Milken litigations, in which he recovered over $1 billion for investors in Columbia Savings and Loan, and policyholders in Executive Life Insurance Company of America, and others; In re Washington Public Power Supply System Sec. Litigation, MDL 551 (D. Ariz.), in which Mr. Weiss was one of three court-appointed lead counsel for a class which recovered $775 million; In re U.S. Financial Securities Litigation, MDL 161 (S.D. Cal.), in which he was chairman of Plaintiffs' Steering Committee in a consolidated action that settled for over $50 million; In re Itel Sec. Litig. (N.D. Cal.), where he acted as co-lead counsel in a consolidated securities action that settled for $40 million; In re Chase Manhattan Bank Stockholders Litigation (N.Y. Supreme Court), where he was co-lead counsel and a derivative settlement for $32.5 million was achieved; Prudential Limited Partnership litigation (recovered $110 million); Mercedes Tire Defect litigation (recovered $100 million); New York Life Insurance Policy holder litigation (recovered $300+ million); and Prudential Life Insurance Policyholder litigation (recovered $4 billion).

**D**AVID J. BERSHAD graduated from Cornell University in 1961 with an A.B. degree in Philosophy. He graduated from Columbia Law School in 1964 and while there he participated in the Harlan Fiske Stone Moot Court Honors Competition and was elected a member of Phi Alpha Delta. He has been primarily engaged in the prosecution of complex securities and commercial litigation throughout the United States. Mr. Bershad is a founding member of Milberg Weiss Bershad Hynes & Lerach LLP, which is widely recognized as the nation's foremost plaintiffs' class action law firm.

He has served as plaintiffs' liaison counsel in *In re Baldwin United Corporation Litigation*, M.D.L No. 581, before Judge Brieant in the United States District Court for the Southern District of New York and in such capacity was the prime negotiator of a series of settlements aggregating more than $220 million, the largest federal securities class action settlement recorded at that time. Subsequently, he has

# EXHIBIT  E

# MILLER FAUCHER and CAFFERTY LLP

Founded in 1992, Miller Faucher combines the talents of attorneys with a wide range of experience in complex civil litigation. The firm has offices in Chicago, Illinois, Philadelphia, Pennsylvania and Ann Arbor, Michigan. Miller Faucher's primary expertise is in the area of federal and state securities, commodities, employee benefits and antitrust litigation. The skill and experience of attorneys now practicing with Miller Faucher has been recognized on repeated occasions by courts which have appointed these attorneys to major positions in complex multi-district or consolidated litigation. As shown below, attorneys from Miller Faucher have taken a leading role in numerous important actions on behalf of defrauded investors, employees, consumers, companies, and others. Miller Faucher attorneys have been responsible for a number of outstanding recoveries and important decisions.[1]

## I. Antitrust

*Federal and state antitrust laws protect the public interest by ensuring market competition. Business practices which restrain trade or destroy competition—such as competitors fixing prices—are generally prohibited. In order to supplement governmental enforcement of the antitrust laws, federal and state law provide for private causes of action to persons injured in their business or property by reason of antitrust violations. Some of the significant antitrust cases in which Miller Faucher attorneys have been prominently involved include:*

---

1. The cases addressed below have been completely or partially resolved. Miller Faucher attorneys are currently involved as counsel in a number of pending class actions.

❑ ***In re Warfarin Sodium Antitrust Litig.,*** MDL 98-1232 (D. Del.). Multidistrict class action on behalf of purchasers of Coumadin, the brand-name warfarin sodium manufactured and marketed by DuPont Pharmaceutical Company. Plaintiffs alleged that the defendant engaged in anticompetitive conduct that wrongfully suppressed competition from generic warfarin sodium. On August 30, 2002, the Court granted final approval to a $44.5 million settlement. *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002).

❑ ***In re Synthroid Marketing Litig.,*** MDL No. 1182 (N.D. Ill). This multidistrict action arises out of alleged unlawful activities with respect to the marketing of Synthroid, a levothyroxine product used to treat thyroid disorders. On August 4, 2000, the court granted final approval of a settlement in the amount of $87.4 million plus interest. *See* 188 F.R.D. 295 (N.D. Ill. 1999). On August 31, 2001, approval of the settlement was upheld on appeal. *See* 264 F.3d 712 (7th Cir. 2001).

❑ ***In re Lorazepam & Clorazepate Antitrust Litig.,*** MDL 1290 (D.D.C.). This multidistict class action arose out of an alleged scheme to corner the market on the active pharmaceutical ingredients necessary to manufacture generic clorazepate and lorazepam tablets. After cornering the market on the supply, defendants raised prices for generic clorazepate and lorazepam tablets by staggering amounts (*i.e.*, 1,900% to over 6,500%) despite no significant increase in costs. On February 1, 2002, Judge Thomas F. Hogan approved a class action settlements on behalf of consumers, state attorneys general and third party payors in the

aggregate amount of $135 million. *See* 205 F.R.D. 369 (D.D.C. 2002).

☐ *In re Lithotripsy Antitrust Litig.*, No. 98 C 8394 (N.D. Ill.). Antitrust class action arising out of alleged stabilization of urologist fees in the Chicago metropolitan area. The parties have entered a settlement agreement and are in the process of seeking court approval. In granting class certification, Judge George Lindberg stated that "Miller Faucher is experienced in antitrust class action litigation and defendants do not dispute that they are competent, qualified, experienced and able to vigorously conduct the litigation." *Sebo v. Rubenstien*, 188 F.R.D. 310, 317 (N.D. Ill. 1999). On June 12, 2000, the court approved a $1.4 million settlement. *In re Lithotripsy Antitrust Litig.*, 2000 WL 765086 (N.D. Ill. June 12, 2000)

☐ *Brand-Name Prescription Drug Indirect Purchaser Actions.* Coordinated antitrust actions against the major pharmaceutical manufacturers in ten states and the District of Columbia. The actions were brought under state law on behalf of indirect purchaser consumers who obtained brand name prescription drugs from retail pharmacies. In 1998, the parties agreed to a multistate settlement in the amount of $64.3 million, which was allocated among the actions. In approving state-specific settlements, the courts were highly complementary of the performance of counsel. In approving the Wisconsin Settlement, for example, Judge Moria G. Krueger commented that "this Court, in particular, has been helped along every step of the way by some outstanding lawyering and I believe that applies to both sides. ... You can hardly say that there's been anything but five star attorneys involved in this case". *Scholfield v. Abbott Laboratories*, No. 96 CV 0460, Transcript of Hearing at 31 & 33 (Cir. Ct., Dane Co., Wisc., Oct. 5, 1998). *See also McLaughlin*

*v. Abbott Laboratories*, No. CV 95-0628, Transcript of Proceedings at 28 (Super. Ct., Yavapai County, Oct. 28, 1998) ("I think the quality of counsel is excellent."). Reported decisions include: *Goda v Abbott Labs*, 1997-1 Trade Cas. (CCH) ¶71,730 (Superior Court D.C., Feb 3, 1997) (granting class certification); *In re Brand Name Prescription Drugs Antitrust Litig. (Holdren, Yasbin, Meyers)*, 1998-1 Trade Cas. (CCH) ¶72,140 (N.D. Ill., Feb. 26, 1998) (remanding three actions to state courts).

☐ *In Re Cellular Phone Cases,* Coordination Proceeding No. 4000 (Superior Court, San Francisco County, Cal.) Class action under California's Cartwright Act, which alleged price-fixing of cellular telephone service in the San Francisco area market. On February 20, 1998, the court granted final approval to a settlement that provides $35 million in in-kind benefits to the Class and a release of debt in the amount of $35 million.

☐ *Garabedian v. LASMSA Limited Partnership*, No. 721144 (Superior Court, Orange County, Cal.). Class action under California's Cartwright Act which alleged price-fixing of cellular telephone service in the Los Angeles area market. By order of January 27, 1998, the court granted final approval to two settlements that provide $165 million in in-kind benefits.

☐ *Lobatz v. AirTouch Cellular,* 94-1311 BTM (AJB) (S.D. Cal.) Class action alleging price-fixing of cellular telephone service in San Diego County, California. On June 11, 1997, the court approved a partial settlement in the amount of $4 million. On October 28, 1998, the Court approved another settlement that entailed $4 million worth of in-kind benefits. In an order entered May 13, 1999, Judge Moskowitz stated that "[t]hrough the course of this complex and four-year long

litigation, Class Counsel [including Miller Faucher] demonstrated in their legal briefs and arguments before this Court their considerable skill and experience in litigating anti-trust class actions..."

❏ *In re Airline Ticket Commission Antitrust Litig.*, MDL No. 1058 (D. Minn.) Antitrust class action on behalf of travel agents against the major airlines for allegedly fixing the amount of commissions payable on ticket sales. The action settled for $87 million. *See* 953 F. Supp. 280 (D. Minn. 1997).

## II. Employee Benefits

*In 1974, Congress adopted the Employee Retirement Income Security Act (ERISA), which is designed to protect the interests of participants and beneficiaries in employer-sponsored pension and welfare benefits plans. Miller Faucher attorneys have been involved in numerous ERISA cases, including:*

❏ *Polk v. Hecht*, No. 92-1340 (D.N.J.). Class action brought under the Employee Retirement Income Act of 1974 on behalf of all participants or beneficiaries under the Mutual Benefit Life Savings and Investment Plan for Employees on July 16, 1991, when Mutual Benefit Life Insurance Corporation was placed in rehabilitation. On April 12, 1995, Judge Harold A. Ackerman approved a $4.55 million settlement, noting that "[c]ounsel did a darn good job, and the record should be clear on that point, that that is the opinion, for what it's worth, of this Court."

❏ *In Re Unisys Retiree Medical Benefits ERISA Litig.*, MDL No. 969 (E.D. Pa). Class action on behalf of over 25,000 retirees of Unisys Corporation concerning entitlement to retiree medical benefits. After trial, in November 1994, Chief Judge Cahn approved a partial settlement

in the amount of $72.9 million. *See* 57 F.3d 1255 (3d Cir. 1995).

## III. Securities and Commodities

*In response to the stock market crash in 1929, Congress passed the Securities Act of 1933 and the Securities Exchange Act of 1934 to protect investors from deceptive and manipulative practices and to ensure that the United States' securities markets operate freely and efficiently. These statutes, as well as other state and federal legislation, provide private causes of action to defrauded investors. Similarly, the Commodities Exchange Act of 1974 provides causes of action to investors injured by fraud or unlawful manipulation in commodities markets. Some of the significant securities and commodities cases in which Miller Faucher attorneys have been prominently involved include:*

❏ *Danis v. USN Communications, Inc.*, No. 98 C 7482 (N.D. Ill.). Securities fraud class action arising out of the collapse and eventual bankruptcy of USN Communications, Inc. On May 7, 2001, the court approved a $44.7 million settlement with certain control persons and underwriters. Reported decisions: 73 F. Supp. 2d 923 (N.D. Ill. 1999); 189 F.R.D. 391 (N.D. Ill. 1999); 121 F. Supp. 2d 1183 (N.D. Ill. 2000).

❏ *In re Bank One Shareholders Class Actions*, No. 00 C 880 (N.D. Ill.). Securities fraud class action against Bank One and certain officers. On June 1, 2001, Judge Milton I. Shadur granted final approval to a $45 million settlement. In his March 16, 2001 testimony about the case before the Task Force on Selection of Class Counsel, Judge Shadur characterized Miller Faucher as a "high quality Chicago law firm."

❏ *In re Sumitomo Copper Litig.*, 96 Civ. 4584(MP) (S.D.N.Y.). Class action arising out of manipulation of the world copper market. On

October 7, 1999, the court approved settlements aggregating $134,600,000. *See* 189 F.R.D. 274 (S.D.N.Y. 1999). In awarding attorneys' fees, Judge Milton Pollack noted that it was "the largest class action recovery in the 75 plus year history of the Commodity Exchange Act". 74 F. Supp. 2d 393 (S.D.N.Y. Nov. 15, 1999). Additional reported opinions: 995 F. Supp. 451 (S.D.N.Y. 1998); 182 F.R.D. 85 (S.D.N.Y. 1998).

❐ *In re Exide Corporation Sec. Litig.*, No. 98-CV-60061 (E.D. Mich.). Securities fraud class action arising out of sales and financial practices of leading battery manufacturer. On September 2, 1999, Judge George Caram Steeh approved a settlement in the amount of $10,250,00.

❐ *In re Caremark International Inc. Sec. Litig.*, No. 94 C 4751 (N.D. Ill.). Securities fraud class action arising out of Caremark's allegedly improper financial arrangements with physicians. On December 15, 1997, the court approved a $25 million settlement.

❐ *In re Nuveen Fund Litig.*, No. 94 C 360 (N.D. Ill.). Class action and derivative suit under the Investment Company Act arising out of coercive tender offerings in two closed-end mutual funds. On June 3, 1997, the court approved a $24 million settlement. Magistrate Judge Edward A. Bobrick commented that "there's no question that the attorneys for the plaintiffs and the attorneys for the defendants represent the best this city [Chicago] has to offer ... this case had the best lawyers I've seen in a long time, and it is without question that I am committed to a view that their integrity is beyond reproach." (6/3/97 Tr. at 5-6.)

❐ *In re Archer-Daniels-Midland, Inc. Sec. Litig.*, No. 95-2287 (C.D. Ill.). Securities fraud class action arising out of the Archer-Daniels-Midland price-fixing scandal. On April 4, 1997, the court approved a $30 million settlement.

❐ *In re Soybean Futures Litig.*, No. 89 C 7009 (N.D. Ill.). A commodities manipulation class action against Ferruzzi Finanziaria, S.p.A. and related companies for unlawfully manipulating the soybean futures market in 1989. In December, 1996, the court approved a settlement in the amount of $21,500,000. *See* 892 F. Supp. 1025 (N.D. Ill. 1995).

❐ *In re Prudential Securities Incorporated Limited Partnerships Litig.*, MDL 1005 (S.D.N.Y.). A massive multidistrict class action arising out of Prudential Securities Incorporated's marketing and sale of speculative limited partnership interests. On November 20, 1995, the court approved a partial settlement, which established a $110 million settlement fund. *See* 912 F. Supp. 97 (S.D.N.Y. 1996). On August 1, 1997, the court approved a partial settlement with another defendant in the amount of $22.5 million.

❐ *Feldman v. Motorola, Inc.*, No. 90 C 5887 (N.D. Ill.) Securities fraud class action against Motorola, Inc. and its high ranking officers and directors. In June 1995, the court approved a $15,000,000 settlement. *See* [1993 Transfer Binder], Fed. Sec. L. Rep. (CCH) ¶97,806 (N.D. Ill. Oct. 14, 1993).

❐ *In re Salton/Maxim Sec. Litig.*, No. 91 C 7693 (N.D. Ill.). Class action arising out of public offering of Salton/Maxim Housewares, Inc. stock. On September 23, 1994, Judge James S. Holderman approved a $2.4 million settlement, commenting that "it was a pleasure to preside over [the case] because of the skill and the quality of the lawyering on everyone's part in connection with the case."

❏ *Horton v. Merrill Lynch, Pierce Fenner & Smith, Inc.,* No. 91-276-CIV-5-D (E.D.N.C.). A $3.5 million settlement was approved on May 6, 1994 in this securities fraud class action arising out of a broker's marketing of a speculative Australian security. The Court stated that "the experience of class counsel warrants affording their judgment appropriate deference in determining whether to approve the proposed settlement." 855 F. Supp. 825, 831 (E.D.N.C. 1994).

❏ *In re Baldwin-United Corporation Sec. Litig.,* MDL-581, (S.D.N.Y.). The litigation involved the sale by the brokerage industry of approximately $3.5 billion of Single Premium Deferred Annuities. A $180 million settlement was obtained and is one of the largest securities class action settlements on record. In awarding interim counsel fees, Judge Charles Brieant commented "...that plaintiffs' attorneys [including Marvin A. Miller and J. Dennis Faucher as co-lead counsel] had rendered extremely valuable services with diligence, energy and imagination, and are entitled to just compensation."

❏ *In re VMS Sec. Litig.,* 89 C 9448 (N.D. Ill.). Securities fraud class action and derivative suit relative to publicly traded real estate investments. The court certified a plaintiff class and subclasses of approximately 100,000 members, 136 F.R.D. 466 (N.D. Ill. 1991). On November 19, 1991, the court approved a class and derivative settlement worth $98 million.

❏ *In re International Trading Group, Ltd. Customer Account Litig.,* No. 89-5545 RSWL (GHKx) (C.D. Cal.) Class action alleging violation of the anti-fraud provisions of the Commodity Exchange Act. The case settled with individual defendants and proceeded to a judgment against the corporate entity. In that

phase, the Court awarded the Class a constructive trust and equitable lien over the corporation's assets and entered a $492 million judgment in favor of the Class. Approximately $7 million was recovered on the judgment.

❏ *In re Telesphere Sec. Litig.,* 89 C 1875 (N.D. Ill.) Securities fraud class action settled for $1.5 million. In a November 28, 1990 opinion, Judge Milton I. Shadur referred to Marvin A. Miller as "...an experienced securities law class action litigator and who also has 20 years practice under his belt. This Court has seen the quality of that lawyer's work in other litigation, and it is first-rate." 753 F.Supp. 716, 719 (N.D. Ill. 1990). Judge Shadur also noted that Patrick E. Cafferty's credentials are "impeccable." *Id.*

❏ *Hoxworth v. Blinder Robinson & Co.,* 88-0285 (E.D. Pa.). Securities fraud and RICO class action resulting from alleged manipulative practices and boiler-room operations in the sale of "penny stocks." *See* 903 F.2d 186 (3rd Cir. 1990). Judgment in excess of $70 million was obtained in February, 1992. The judgment was affirmed by the Third Circuit Court of Appeals, 980 F.2d 912 (3rd Cir. 1992). *See also Hoxworth v. Blinder,* 74 F.3d 205 (10th Cir. 1996).

❏ *In re Public Service Company of New Mexico Class and Derivative Litig.,* Master File No. 91-0536-M (S.D. Cal.). Consolidated class and derivative action involving allegations of waste and mismanagement at the Public Service Company of New Mexico. In May, 1992, the court approved a settlement of $33 million. *See* [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,988 (S.D. Cal. 1992).

❏ *In re First Commodity Corporation of Boston Customer Account Litig.,* MDL-713 (D. Mass). Class actions alleging violation of the anti-fraud provisions of the Commodity Exchange

Act. The action settled for $5.3 million. *See* 119 F.R.D. 301 (D. Mass. 1987).

❑ *O'Brien v. National Property Analysts, Inc.*, No. 88 CIV 4153 (PKL) (S.D.N.Y.) Securities fraud class action arising out of the marketing of real estate limited partnership interests. This case was partially settled for $5,000,000 and the invalidation of wrap around mortgages worth as much as $250 million.

❑ *Spring/Rothschild v. Continental Illinois National Bank & Trust Company,* 84 C 4648 and 84 C 8596 (consolidated) (N.D. Ill.) Shareholder class action for violations of the Securities Exchange Act. The court approved a settlement in the amount of $17.5 million for the class.

❑ *Smith v. Groover,* 77 C 2297 (N.D.Ill.). A commodities fraud and antitrust class action against the Chicago Board of Trade and several floor traders involving the manipulation of the soybean market through bucketing. The case established that, in the Northern District of Illinois, a plaintiff has an implied private right of action under the Commodity Exchange Act and that an Exchange can be sued for negligence in failing to supervise its members. The case was affirmed, *sub nom*, by the United States Supreme Court in *Merrill Lynch Pierce Fenner & Smith v. Curran*, 451 U. S. 906 (1982).

## IV. Shareholder Derivative Suits

*When the management of a corporation acts to the detriment of the interests of the company and its shareholders, an individual shareholder, upon satisfying stringent procedural requirements, can assert the right of the corporation in a derivative action. Miller Faucher attorneys have been involved in several important derivative actions including:*

❑ *Benfield v. Steindler,* No. C-1-92-729 (S.D. Ohio). Shareholder derivative suit on behalf of General Electric Corporation shareholders arising out of the sale of military aircraft engines to the government of Israel in violation of U.S. law. On December 10, 1993, the Court approved a settlement in the amount of $19.5 million. In a January 13, 1994 Report to the Court Concerning Attorney Fees, the Special Master characterized Miller Faucher as a "leading litigation" firm, and stated that the "representation given plaintiff was first rate".

❑ *In re Structural Dynamics Research Corporation Derivative Litig.*, No. C-1-94-650 (S.D. Ohio). Shareholder derivative action arising out of Structural Dynamics's inaccurate reporting of its financial performance. In approving a $5 million settlement on July 19, 1996, Judge Herman J. Weber stated that "in my mind the highest professional service a lawyer can give to his or her client is to terminate the litigation as early as possible and at the most economical cost to your clients. The Court finds that the lawyers in this case have done just that..."

## V. Miscellaneous

❑ *PrimeCo Personal Communications, L.P. v. Illinois Commerce Commission,* No. 98 CH 5500 (Circuit Court of Cook County, Ill.). This class action sought recovery of an unconstitutional infrastructure maintenance fee imposed by municipalities on telephone and other telecommunications customers in the State of Illinois. On August 1, 2002, the court granted final approval to a settlement of wireless telephone and pager customers' claims against the City of Chicago worth over $31 million. The case continues as to landline telephone customers' claims against the City of Chicago, and both wireless and landline claims against other municipalities.

❐ *Gersenson v. Pennsylvania Life and Health Insurance Guaranty Assoc.*, No. 3468 (Pa. Common Pleas). Class action against state insurance guaranty association brought on behalf of Pennsylvania resident insureds of Executive Life Insurance Co. for violating due process, and failing to pay required benefits and other monies. Plaintiff's motion for summary judgment was granted and the court awarded plaintiff and the Class more than $18 million. The judgment was upheld on appeal.

❐ *Supnick v. Amazon.Com, Inc., and Alexa Internet*, No. 00-CV-221 (W.D. Wash.). Class action against internet browsing service provider and its parent for violating user privacy by secretly collecting user personally identifying information without informed consent. On July 27, 2001, the court granted final approval to a settlement that included programmatic and monetary relief. The FTC endorsed the settlement and elected to not prosecute defendants based, in part, on the relief achieved in the settlement with plaintiffs.

❐ *Curley v. Cumberland Farms Dairy, Inc.*, No. 86-5057 (D.N.J.). Class action arising out of convenience store chain's treatment of employees to prevent losses. In September 1993 the court approved a settlement in the amount of $5.5 million. In a November 12, 1993 opinion awarding attorneys fees, Judge Stanley S. Brotman noted that "petitioners [including Mr. Faucher and Ms. Meriwether] demonstrated in this case great skill and determination in representing their clients through the many stages of this lengthy and complex litigation."

❐ *In re Chubb Corporation Drought Insurance Litig.*, MDL-782 (S.D. Ohio). A breach of contract action arising out of the termination of an agricultural drought insurance program in the midst of the drought of 1988. The action settled for more than $70 million.

## VI. Defendants

In addition to the above, Miller Faucher attorneys have also represented defendants in complex class actions and derivative suits, including *In re Del-Val Financial Corp. Sec. Litig.*, MDL-872 (S.D.N.Y.); *In re Kenbee Limited Partnership Litig.*, No. 91-2174 (D.N.J.); *Weiss v. Winner's Circle of Chicago, Inc.*, No. 91 C 2780 (N.D. Ill.); *Levy v. Stern*, No. 11955 (New Castle County, Delaware). The court's decision in *In re Del-Val Financial Corp. Sec. Litig.*, 868 F. Supp. 547 (S.D.N.Y. 1994) resulted in a significant extension of the law concerning partial settlements of securities fraud class actions.

## VII. Individual Biographies

## PARTNERS

❐ *MARVIN A. MILLER* (Chicago) is a 1970 graduate of Illinois Institute of Technology-Chicago-Kent College of Law, where he was a member of the Editorial Board of the *Chicago-Kent Law Review*. Mr. Miller received his undergraduate degree from Hofstra University in Hempstead, New York in 1967. He is admitted to the state bars of Illinois and New York, the United States Court of Appeals for the Third, Fourth Seventh, and Eleventh Circuits, the United States District Courts for the Northern District of Illinois (including the Federal Trial Bar), Southern District of New York, Eastern District of Michigan, District of Arizona and Northern District of California.

❐ *J. DENNIS FAUCHER* (Philadelphia) was a partner in the Philadelphia law firm of Saul, Ewing, Remick & Saul ("Saul Ewing") from 1974 through 1991. Mr. Faucher received his law

degree from the University of Idaho Law School, *summa cum laude*, in 1962. He received his undergraduate degree from the University of Idaho in 1959. His practice includes civil trial and appellate practice before federal and state courts, banking litigation, securities litigation, and all aspects of business bankruptcy law. He is a member of the Philadelphia Trial Lawyers Association (Commercial Litigation Committee) and American Bar Association (Commercial Litigation Committee of Litigation Section). He also is a former Assistant Professor of Law, University of Idaho, and a former attorney for the Trustees of the Penn. Central Railroad Reorganization. Mr. Faucher is licensed to practice in all state and appellate and trial courts of Pennsylvania and Idaho, and is also a member of bars of the Supreme Court of the United States, Courts of Appeals for the Second, Third, and Ninth Circuits, Tax Court of the U.S., and the United States District Court for the Eastern District of Pennsylvania and the District of Idaho.

❑ *PATRICK E. CAFFERTY* (Ann Arbor) graduated from the University of Michigan, with distinction, in 1980 and obtained his J.D., *cum laude*, from Michigan State University-DCL College of Law in 1983. In law school, he received the American Jurisprudence Award for study of commercial transactions law. From 1983 to 1985, he served as a prehearing attorney at the Michigan Court of Appeals and as a Clerk to Judge Glenn S. Allen, Jr. of that Court. Mr. Cafferty is admitted to the state bars of Michigan and Illinois, the Supreme Court of the United States, the United States Courts of Appeals for the Third, Fourth, Sixth and Seventh Circuits, and the United States District Courts for the Eastern District of Michigan, Western District of Michigan, District of Arizona and Northern District of Illinois. Mr. Cafferty is a member of the Amicus Committee of the National

Association of Securities and Commercial Law Attorneys and he has authored briefs filed with the Supreme Court in a number of cases, including *Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995).

❑ *ELLEN MERIWETHER* (Philadelphia) received her law degree from George Washington University, *magna cum laude*, in 1985. She was a member of the *George Washington Law Review* and was elected to the Order of the Coif. Ms. Meriwether received a B.A. degree, *with highest honors*, from LaSalle University in 1981. She was an adjunct professor at LaSalle University teaching a course in the University's honors program from 1988-1993. Ms. Meriwether is a member of the Bar of the Commonwealth of Pennsylvania and is admitted to practice before the United States Supreme Court, the United States Courts of Appeals for the Third Circuit, the Tenth Circuit and the Eleventh Circuit, and the United States District Court for the Eastern District of Pennsylvania. She is also a member of the Federal Courts Committee and the Nominating Committee of the Philadelphia Bar Association, and is a member of the Pennsylvania and American Bar Associations. Prior to joining Miller Faucher, Ms. Meriwether was associated with Saul Ewing from 1987 through 1992, where she handled a variety of litigation matters in both state and federal court.

❑ *BRYAN L. CLOBES* (Philadelphia) is a 1988 graduate of the Villanova University School of Law and received his undergraduate degree from the University of Maryland. While in law school, Mr. Clobes clerked for Judge Arlin M. Adams of the United States Court of Appeals for the Third Circuit and Judge Mitchell H. Cohen of the United States District Court for the District of New Jersey. In 1988, after graduating from law school, Mr. Clobes served as a law clerk to Judge Joseph Kaplan of the Maryland Circuit Court in Baltimore. From 1989 through June, 1992, Mr.

Clobes served as Trial Counsel to the Commodity Futures Trading Commission in Washington, D.C. Mr. Clobes recently authored *In the Wake of Varity Corp. v. Howe: An Affirmative Duty to Disclose Under ERISA*, 9 DePaul Bus. L.J. 221 (1997). Mr. Clobes is also a member of the Amicus Committee of the National Association of Securities and Commercial Law Attorneys and he has authored briefs filed with the Supreme Court in a number of recent ERISA cases, including *Varity Corp. v. Howe* and *Schoonejongen v. Curtiss-Wright Corp.* Mr. Clobes has been admitted to the bar in New Jersey and Pennsylvania, the Supreme Court of the United States, the United States Court of Appeals for the Third Circuit and the United States District Court for the Eastern District of Pennsylvania.

❏ *JENNIFER WINTER SPRENGEL* (Chicago) is a 1990 graduate of DePaul University College of Law, where she was a member of the *DePaul University Law Review*. She received her undergraduate degree from Purdue University in 1987. Ms. Sprengel has handled a variety of commercial litigation matters in both state and federal court. Ms. Sprengel is admitted to practice law in Illinois, the United States District Court for the Northern District of Illinois and the United States Court of Appeals for the Third and Seventh Circuits.

❏ *MICHAEL J. WILLNER* (Philadelphia) graduated from the University of Pennsylvania in 1984 and received his J.D., *cum laude*, from the Temple University School of Law in 1988. In law school, he received the American Jurisprudence Award for Secured Transactions and was a member of the Temple Law Review. After law school, Mr. Willner served as a law clerk to Senior Judge John B. Hannum of the United States District Court for the Eastern District of Pennsylvania. He then was associated with Duane Morris & Heckscher, where his practice included civil trial and appellate litigation in a variety of matters. Beginning in 1997, he was a principal of Kane, Willner & Holman, a boutique commercial litigation firm in Philadelphia. Mr. Willner has been admitted to the bar in Pennsylvania, the United States Court of Appeals for the Third Circuit and the United States District Court for the Eastern District of Pennsylvania. Mr. Willner joined Miller Faucher in September 2001.

❏ *WILLIAM R. KANE* (Philadelphia) is a graduate of the Temple University School of Law, where he received his law degree, *cum laude*, in 1990 and an LL.M. in Trial Advocacy in 1994. He received his undergraduate degree, magna cum laude, from Temple University in 1983. Prior to his legal career, he was an Assistant Vice President for First Pennsylvania Bank and Corporation in the Public and Investor Relations Department, where he received the Chairman's Excellence Award for outstanding service. Mr. Kane began his law career with Duane Morris & Heckscher in 1990, where his practice focused on commercial litigation matters. Beginning in 1997, he became a principal in Kane, Willner & Holman, a boutique commercial litigation firm based in Philadelphia. In 1998, Mr. Kane was appointed to serve as a Chapter 7 panel trustee for the Office of the United States Trustee. In that role, he facilitated the administration of cases pending in the United States Bankruptcy Court for the Eastern District of Pennsylvania. He has been admitted to the bar in Pennsylvania and New Jersey. He also has been admitted to practice before the United States Court of Appeals for the Third Circuit, the United States District Courts for the Eastern District of Pennsylvania, the Middle District of Pennsylvania, the District of New Jersey and the Southern District of New York. Mr. Kane joined Miller Faucher in September 2001.

## *ASSOCIATES*

❑ *MELODY FORRESTER* (Philadelphia), an associate with the firm since 1999, is a 1993 graduate of Columbia University School of Law. Ms. Forrester received her B.A., *cum laude*, from the University of Virginia in 1985. As counsel to the firm from 1995 through 1998, Ms. Forrester focused on complex securities and antitrust class actions. From 1989 through 1995, she served as a litigation support consultant to Rogers & Wells in New York. Ms. Forrester is admitted to practice in the states of Pennsylvania and New York and the United States District Court for the Eastern District of New York. She is also a member of the New York State and American Bar Associations.

❑ *LORI A. FANNING* (Chicago) received her undergraduate degree from the University of Nebraska at Omaha in 1986, a Masters Degree from Central Michigan University (Master in Science Administration) in 1993 and her law degree, with honors, from Illinois Institute of Technology Chicago-Kent College of Law in 2000, with a Certificate in Litigation and Alternative Dispute Resolution. Ms. Fanning is admitted to practice in Illinois and the United States District Court for the Northern District of Illinois. She is also a member of the American, Illinois State and Chicago Bar Associations.

❑ *MICHAEL S. TARRINGER* (Philadelphia) is a 1993 graduate of the Villanova University School of Law. Mr. Tarringer received his undergraduate degree, *summa cum laude*, from Philadelphia University in 1987. Before joining the firm, Mr. Tarringer served as a law clerk to Judge Robert F. Kelly of the United States District Court for the Eastern District of Pennsylvania. Mr. Tarringer also worked at Levin, Fishbein, Sedran & Berman as a contract

attorney for the Plaintiffs' Legal Committee in the *Orthopedic Bone Screw Products Liability Litigation*, MDL 1014, as well as the Plaintiffs' Management Committee in the *Diet Drugs Products Liability Litigation*, MDL 1203. Mr. Tarringer is admitted to the bar in Pennsylvania, the United States Court of Appeals for the Third Circuit, and the United States District Court for the Eastern District of Pennsylvania.

❑ *CHRISTOPHER B. SANCHEZ* (Chicago) is a 2000 graduate of the DePaul University College of Law, where he wrote for the *Journal of Art and Entertainment Law* and was the school's student representative for the Hispanic National Bar Association. He received his undergraduate degree, *cum laude*, from the University of New Mexico in 1996. Mr. Sanchez is currently a member of the Hispanic National Bar Association.

❑ *ANTHONY FATA* (Chicago) joined the firm in in 2003. Prior to his joining the firm, he was an associate in the trial practice of a major national law firm based in Chicago, where he spent three and a half years defending corporations, officers and directors in securities fraud and consumer fraud class actions, SEC investigations and enforcement actions, as well as product liability and ERISA cases. Mr. Fata also spent a significant amount of time handling general commercial litigation matters on behalf of corporate clients. Mr. Fata is the author of "Class Actions: Attaining Settlement Class Certification Under Amchem and Ortiz," 19 *Product Liability Law & Strategy* 1 (May 2001) and was a contributing author of *IICLE Securities Law*, Chapter 15 — Civil Liabilities And Remedies (2003). Mr. Fata is licensed to practice in Illinois and before the U.S. District Court for the Northern District of Illinois. Mr. Fata received his law degree, with honors, from The Ohio State University in 1999, where he was elected to the

Order of the Coif, and his bachelor's degree from Miami University in 1995.

❑ *NYRAN ROSE PEARSON* (Chicago) received her undergraduate degree *cum laude* from Illinois Wesleyan University in 1995, and earned her law degree from the University of Oregon School of Law in 1999. Following law school, Ms. Pearson served as a clerk to the Honorable George A. Van Hoomissen of the Oregon Supreme Court. She is the author of *Protecting Agricultural Lands: An Assessment of the Exclusive Farm Use Zone System*, 77 Oregon Law Review 993 (1998). Ms. Pearson is admitted to practice in the state courts of Oregon and Illinois, as well as the United States District Courts for the Northern District of Illinois and the Southern District of Illinois. She is also a member of the American and Chicago Bar Associations.

❑ *JEFFREY D. LERNER* (Philadelphia) focuses his practice with Miller Faucher and Cafferty on antitrust, consumer fraud, and employment discrimination class action litigation, as well as private investor securities arbitrations. He is currently involved in actions against pharmaceutical companies and national retail chains, and contributes heavily to the firm's growing practice involving brokerage liability claims against stockbrokers and investment advisors. He is the author of the Comment, "Encouraging Litigation at the Expense of Our Children: The Inapplicability of *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources* to the Individuals With Disabilities Education Act," 76 Temp. L. Rev. 381 (2003). Mr. Lerner is a 2003 graduate of the Temple University Beasley School of Law, where he was

a contributing member of the Law Review. He received his undergraduate degree in History from Franklin and Marshall College in 1998. Mr. Lerner is licensed to practice law in Pennsylvania and New Jersey.

#### OF COUNSEL

❑ *DOM J. RIZZI* (Chicago) received his B.S. degree from DePaul University in 1957 and his J.D. from DePaul University School of Law in 1961, where he was a member of the *DePaul University Law Review*. From 1961 through 1977, Judge Rizzi practiced law, tried at least 39 cases, and briefed and argued more that 100 appeals. On August 1, 1977, Judge Rizzi was appointed to the Circuit Court of Cook County by the Illinois Supreme Court. After serving as circuit court judge for approximately one year, Judge Rizzi was elevated to the Appellate Court of Illinois, First District, where he served from 1978 to 1996. Judge Rizzi also teaches at both the undergraduate and graduate level: since 1980, he has been a part-time faculty member of the Loyola University School of Law and, since 1992, he has been a part-time faculty member at the University of Illinois-Chicago. Judge Rizzi became counsel to the firm in October, 1996.

❑ *MATTHEW E. VAN TINE* (Chicago) received his A.B. degree *cum laude* from Harvard College in 1980, and his J.D. degree *magna cum laude* from Boston University School of Law in 1983, where he served as an Executive Editor of the Law Review and the author of Note, *Application of the Federal Parole Guidelines to Certain Prisoners: An Ex Post Facto Violation*, 62 B.U.L. Rev. 515 (1982). Following law school, Mr. Van Tine served as a law clerk to the Honorable Raymond J. Pettine of the United

States District Court for the District of Rhode Island. Thereafter, he worked as an associate at Schiff Hardin & Waite in Chicago, as Assistant Corporation Counsel for the City of Chicago Law Department, and was a partner at Saunders & Monroe in Chicago. Mr. Van Tine is admitted to the state bars of Illinois and Massachusetts, as well as the United States District Courts for the Northern District of Illinois and the District of Massachusetts. He is a member of the Chicago, American, and Asian American Bar Associations, and the Abraham Lincoln Marovitz American Inn of Court.