# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 8884 | **DATE** | 3/19/2004 |
| **CASE TITLE** | Taubenfeld vs. Career Education Corporation, et al., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Schroder's motion for appointment of lead plaintiff and approval of proposed lead plaintiff's selection of lead counsel is granted in part and ruling reserved in part [#10]. The motions of Koontz and Margaritis [#12] and Campbell and Ratnofsky [#15] are denied. The court orders the following cases consolidated for all purposes: *Taubenfeld v. Career Ed. Corp., et al.*, 03 C 8884; *Stellato v. Career Ed. Corp., et al.*, 03 C 8939; *Katz v. Career Ed. Corp., et al.*, 03 C 9157; *Morris, et al. v. Career Ed. Corp., et al.*, 04 C 305; *Woo v. Career Ed. Corp., et al.*, 04 C 0339; and *Schild v. Career Ed. Corp., et al.*, 04 C 0906. The court further appoints Thomas Schroder as lead plaintiff in this consolidated action. Schroder shall have until April 7, 2004 to file the supplemental information discussed above.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 15 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 22 |
| | Copy to judge/magistrate judge. | | | |
| | | | 3/19/2004 | |
| | | | date mailed notice | |
| MD | courtroom deputy's initials | | MD | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

DANIEL TAUBENFELD, individually and on behalf of all others similarly situated,

    Plaintiff,

vs.

CAREER EDUCATION CORPORATION, JOHN M. LARSON and PATRICK K. PESCH,

    Defendants.

No. 03 C 8884
Judge Joan H. Lefkow

## MEMORANDUM OPINION AND ORDER

Currently pending in this district are six related securities fraud putative class actions (the "related cases") brought against Career Education Corporation ("CEC"), John M. Larson ("Larson") and Patrick K. Pesch ("Pesch").[1] Each action alleges that the defendants violated § 10(b) of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78j(b), Rule 10b-5 promulgated under § 78j(b), and § 20(a) of the Act, 15 U.S.C. § 78t(a). The court has been presented with three competing motions for appointment of lead plaintiff in these cases, brought by, respectively, (1) Thomas Schroder; (2) Phil M. Campbell and Laurence Ratnofsky; and (3) Jeffrey Koontz and Nicholas Margaritis. Each potential lead plaintiff seeks an order granting similar relief, including (a) consolidation of the related cases; (b) appointment as lead plaintiff; and (3) approval of lead counsel for the class. For the reasons stated below, Schroder's motion is

---

[1] The related cases are *Taubenfeld v. Career Ed. Corp., et al.*, 03 C 8884; *Stellato v. Career Ed. Corp., et al.*, 03 C 8939; *Katz v. Career Ed. Corp., et al.*, 03 C 9157; *Morris, et al. v. Career Ed. Corp., et al.*, 04 C 305; *Woo v. Career Ed. Corp., et al.*, 04 C 0339; and *Schild v. Career Ed. Corp., et al.*, 04 C 0906.

granted in part and ruling is reserved in part while the other potential lead plaintiffs' motions are denied.

## BACKGROUND

CEC is a Delaware corporation with its principal place of business in Hoffman Estates, Illinois. During the time period relevant to this action, Larson served as CEC's Chief Executive Officer, President and Chairman, and Pesch as its Chief Financial Officer, Treasurer and Secretary. CEC is a provider of private, for-profit postsecondary education with 51 campuses in countries including the United States, Canada, France, the United Kingdom and the United Arab Emirates. In each of the six cases before this court, CEC, Larson and Pesch are alleged to have made materially false and misleading statements during the proposed class period. The defendants are alleged to have falsified student records in order to increase graduation rates and enrollment, concealed problems that could have threatened the accreditation of many of its schools, graduated students who had not completed required courses and billed students for taking courses they never attended.

## DISCUSSION

### A. Consolidation

All of the potential lead plaintiffs argue that the six related cases should be consolidated because there are similar issues of fact and law involved in each case. Consolidation is appropriate "[w]hen actions involving a common question of law or fact are pending before the court . . . ." Fed. R. Civ. P. 42(a). The court agrees that consolidation is appropriate for the six related cases insofar as each involves class action claims on behalf of purchasers of CEC stock and each asserts similar if not overlapping claims for relief. Moreover, given the similarity of the

claims, the court believes that consolidation of these cases will result in substantial savings of judicial time and effort. Accordingly, the related cases are hereby consolidated for all purposes pursuant to Rule 42(a) of the Federal Rules of Civil Procedure.

**B.     Appointment of Lead Plaintiff**

The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 78u-4 *et seq.*, establishes the procedure for appointment of a lead plaintiff in "each private action arising under [the Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). The PSLRA presents a rebuttable presumption that

> the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that–
> (aa) has either filed the complaint or made a motion in response to a notice [published to potential class members] . . .;
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

Each of the potential lead plaintiffs abided by requirement (aa) set out above. Under the PSLRA, after notice of the law suit is provided to the potential class members (which occurred in this case on December 10, 2003), within 60 days of this notice any person or group of persons who wishes to proceed as lead plaintiff must present their motion to the court. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). That 60 day period expired on February 9, 2004. The motions currently pending before the court were all made by this February 9 date.

As for the potential lead plaintiff with the largest financial interest, the parties focus on who had the most net losses during the proposed class period. Under that benchmark, there is no

3

dispute that Schroder had the most losses, measured at $96,512. This is significantly larger than the $10,344.93 Campbell and Ratnofsky claimed to have lost and the $52,300 claimed to have been lost by Koontz and Margaritis. Thus, so long as Schroder otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, he would be the most adequate plaintiff envisioned under the PSLRA.

Rule 23(a) states that

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In selecting the lead plaintiff under the PSLRA, the court focuses on the typicality and adequacy requirements as the only relevant considerations. *See, e.g., Johnson v. Tellabs, Inc.*, 214 F.R.D. 225, 228 (N.D. Ill. 2002); *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *6 (N.D. Ill. Aug. 11, 1997) ("'[a] wide-ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class certification. This inquiry, therefore, focuses on . . . typicality and adequacy.'") (brackets in original, citation omitted). The typicality requirement is met so long as "plaintiff's claim . . . arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (quoting *Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Under the adequacy requirement the plaintiff must demonstrate that "(1) his claims are not antagonistic or in conflict with those of the class; (2) he has sufficient interest in the outcome of the case to

ensure vigorous advocacy; and (3) he is represented by competent, experienced counsel who [is] able to prosecute the litigation vigorously." *Johnson*, 214 F.R.D. at 228-29.

Koontz and Margaritis attack Schroder's ability to serve as lead counsel on both typicality and adequacy grounds. Concerning typicality, Koontz and Margaritis claim that Schroder was a day trader, thereby making him atypical from the remaining members of the class and subject to certain unique defenses. As for adequacy of representation, Koontz and Margaritis argue that Schroder's choice of counsel (the law firm of Goodkind Labaton Rudoff & Sucharow LLP ("Goodkind Labaton")) is inadequate because rather than conducting an independent investigation prior to filing its complaint, Goodkind Labaton copied the complaint prepared by counsel for Koontz and Margaritis (the law firm of Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg Weiss")). As provided for in the PSLRA, in challenging the presumptive lead plaintiff's typicality and adequacy, Koontz and Margaritis must come forward with proof that Schroder will not adequately protect the interests of the class or that he is subject to unique defenses making him incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Starting with the challenge to Schroder's typicality, at first glance it would certainly appear that Schroder meets all of the typicality requirements. He purchased shares of CEC stock during the proposed class period at prices alleged to have been inflated by false and misleading statements, which thereby caused him damage. Koontz and Margaritis nevertheless suggest that Schroder's status as an alleged "day trader" makes him atypical and subject to unique defenses. According to Koontz and Margaritis, Schroder "sold CEC common stock in the same day or, in one instance, sold it the day after purchasing it" and that he "clearly is not an investor in any true

5

sense of the word, rather he is a trader looking to capitalize on small price fluctuations in CEC common stock that arguably have little to do with integrity of the Company's Class Period representations." Because of his pattern of trading, Koontz and Margaritis contend that Schroder is subject to unique defenses and cannot avail himself of the "fraud on the market" theory to prove reliance on CEC's false and misleading statements.

As Schroder points out, Koontz and Margaritis do not elaborate on what, in their view, makes someone a "day trader."[2] In any event, that description does not appear apt for Schroder. Schroder attaches to his certification his trading record in CEC's stock within the class period, which includes a purchase and sale of 5,000 shares on November 17, 2003 (resulting in a net loss of $20,000), a purchase and sale of 4,600 shares on December 1, 2003 (resulting in a net loss of $10,212), a purchase of 5,000 shares on December 2, 2003 for $273,750 and a sale of those 5,000 shares on December 3, 2003 for $207,450. Schroder's record certainly does not appear to be one of an individual who makes frequent trades each day or one that is attempting to make a career out of buying and selling stocks very quickly. Indeed, evidence in the record shows that Schroder serves as a manager for an environmental engineering construction company.[3]

---

[2] The web site www.investorwords.com, brought to the court's attention by Schroder, defines a "day trader" as a

> Very active stock trader who holds positions for a very short time and makes several trades each day. Day traders are individuals who are trying to make a career out of buying and selling stocks very quickly, often making dozens of trades in a single day and generally closing all positions at the end of each day. Day trading can be costly, since the commissions and the bid/ask spread add up when there are so many transactions.

[3] Koontz and Margaritis would apparently like to portray themselves as long term investors in CEC stock. The record, however, discloses that Koontz bought shares of CEC stock on November 18, 2003, which he then sold on December 4, 2003. He purchased more shares on December 8, 2003, which he sold on December 15, 2003. As for Margaritis, he purchased shares on November 26, 2003, most of which were then sold on November 28 and December 3, 2003.

The case Koontz and Margaritis cite in support of their belief that status as a day trader makes Schroder atypical is *Bank One Shareholders Class Actions*, 96 F. Supp. 2d 780 (N.D. Ill. 2000). In that case the court noted that Thales Fund Management L.L.C. (referred to in the opinion as "Thales") was

> an institutional investment manager (a hedge fund) that engaged in extensive daytrading, first shorting Bank One stock (presumably because it was regarded as overvalued at market price) and then buying to cover the short position. In addition to that trading pattern, of course Thales is not simply a buyer for its own account, standing instead in the place of whatever number of investors are participants in its managed fund. Taken all in all, this Court does not view that posture as qualifying Thales for the "most adequate plaintiffs" designation in preference to the handful of institutional investors who . . .[have] greater aggregate claimed losses.

*Id.* at 784.

As Schroder points out, there are numerous portions of the *Bank One* case that are distinguishable, including that Thales had engaged in "extensive daytrading" and that its losses actually represented those of "an unknown number of investors." Moreover, Thales' status as the largest investor was certainly questionable given that the court made clear that Thales did not have a larger loss than the "handful of institutional investors who make up the Pension Group." The facts here are not similar enough to those in *Bank One* to warrant that case's application.

Koontz and Margaritis also theorize that day traders may not be able to rely on the "fraud on the market" theory of reliance. They cite no case for this proposition and, in any event, many courts have rejected this theory. *See, e.g., In re Royal Ahold N.V. Sec. and ERISA Litig.*, 219 F.R.D. 343, 354 (D. Md. 2003) ("It has been suggested that Generic is atypical because it is a day-trader, and day-traders allegedly do not rely on the financial statements or the fundamental value of a company as the rest of the market does. But where false information and misleading

omissions pollute the market, all types of investors are injured."); *In re Sunbeam Sec. Litig.*, No. 98-8258-Civ, 2001 WL 899658, at *1-2 (S.D. Fla. July 3, 2001) ("I have not found, nor have defendants presented, persuasive precedent or case law establishing that day traders . . . absent specific refutation of the rebuttable presumption of reliance, are not entitled to the presumption of reliance where they bought in an efficient secondary market like the NYSE."). Accordingly, seeing no proof that Schroder is subject to unique defenses making him incapable of adequately representing the class, the challenge to his typicality is rejected.

As for adequacy of representation, Koontz and Margaritis argue that Schroder has selected counsel that has not independently investigated this case but instead simply copied the work product of counsel for Koontz and Margaritis. On the court's own review of the two complaints at issue, they are, in fact, identical. One was filed by Milberg Weiss on behalf of Daniel Taubenfeld. Thereafter, Goodkind Labaton filed the identical complaint on behalf of Stuart Katz.[4] Some courts have taken issue with such behavior and questioned whether it is indicative of counsel taking part in the necessary investigation required by Federal Rule of Civil Procedure 11. *See, e.g., Mayo v. Apropros Tech., Inc.*, No. 01 C 8406, 2002 WL 193393, at *5 (N.D. Ill. Feb. 7, 2002); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 311 (S.D.N.Y. 2001). Nevertheless, without commenting on the appropriateness of copying another plaintiff's complaint verbatim, for two reasons the court does not believe this reflects on Schroder's adequacy to serve as lead plaintiff.

Initially, this issue seems more a reflection on Schroder's choice of counsel rather than his adequacy to serve as lead plaintiff. Indeed, the court in *Mayo* addressed this issue in relation

---

[4]Neither Taubenfeld nor Katz has moved for appointment to serve as lead plaintiff.

to the lead plaintiff's selection of lead counsel. Under the PSLRA the most adequate plaintiff may select and retain counsel subject, of course, to the court's approval. 15 U.S.C. 78u-4(a)(3)(B)(v); *see also, In re Party City Sec. Litig.*, 189 F.R.D. 91, 114 (D.N.J. 1999) ("The decision to approve counsel selected by the lead plaintiff is a matter within the discretion of the district court."). More fundamentally, however, this issue of copying another's complaint would have persuasive effect if there was evidence showing that the proposed lead counsel did not, in fact, undertake a sufficient investigation before filing a complaint. That is not the case here. In an affidavit filed in further support of Schroder's motion, an attorney at Goodkind Labaton swore that the firm conducted an internal investigation into the alleged wrongdoing at CEC six days before the initial Taubenfeld complaint was filed and that this examination included review of analyst reports and various public records such as newspaper articles and Securities and Exchange Commission filings. (Keller Aff. in further support at ¶¶ 3-4.) On December 4, 2003, Goodkind Labaton prepared an internal report examining a variety of public sources which contained many of the basic factual and legal allegations now found in the Taubenfeld and Katz complaints. (*Id.* at ¶ 6.) Moreover, Goodkind Labaton claims that many of its additional allegations, which were derived based on confidential sources, were not provided in the complaint it filed because it would have given the defendants more time to prepare defenses to such information.[5] (*Id.* at ¶ 11.) Accordingly, the court sees no merit to the suggestion that Goodkind Labaton conducted no pre-complaint investigation and otherwise rejects the

---

[5] In response to the suggestion of copying, Goodkind Labaton states that it is "common practice" in class action securities fraud cases for plaintiffs to copy, in whole or in substantial part, earlier filed complaints, particularly where, as here, those complaints are based predominantly on publicly available information. Once again, the court need not and does not comment on such practices.

suggestion that Schroder should not serve as lead plaintiff because his adequacy of representation can be questioned.[6]

Based on the above, because Schroder has the largest financial interest in the relief sought by the class and because he satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the court appoints him as lead plaintiff in this action.

## C. Appointment of Lead Counsel

The PSLRA provides that the "most adequate plaintiff shall, subject to approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Nevertheless, "[t]he decision to approve counsel selected by the lead plaintiff is a matter with[in] the discretion of the district court." *Mayo*, 2002 WL 193393, at *5 (first bracket in original) (quoting *In re Party City Sec. Litig.*, 189 F.R.D. at 114). Schroder has chosen Goodkind Labaton to serve as lead counsel. Goodkind Labaton lists a number of securities fraud class actions in which it has participated as lead counsel. However, the firm's biography, which is claimed to be attached as exhibit 3, is not included. Moreover, Schroder's motion contains no information about important matters such as the anticipated staffing of this case and the proposed fee structure. This is significant information the court would like to review prior to making a determination on lead counsel. *See, e.g., In re Motorola Sec. Litig.*, No. 03 C 0287, 2003 WL 21673928, at *7 (N.D. Ill. July 16, 2003) (approving lead counsel with evidence of proposed fees that "do not appear unreasonable"); *Johnson*, 214 F.R.D. at 229 (approving lead counsel

---

[6]Koontz and Margaritis also argue that there is evidence of some sort of "eleventh-hour agreement between lawyers," specifically between Goodkind Labaton and counsel for Campbell and Ratnofsky, the law firm of Cauley Geller. Koontz and Margaritis suggest that Cauley Geller ceded to Goodkind Labaton in this case in exchange for Goodkind Labaton ceding to Cauley Geller in a class action filed in Massachusetts. Insofar as Schroder has the largest financial interest in this case and otherwise meets the requirements of Rule 23(a), which this alleged "agreement" does not change, the court sees no merit to this argument.

10

"[b]ecause the anticipated staffing and proposed fees . . . do not appear unreasonable . . . ,"); *Mayo*, 2002 WL 193393, at *5-6 (requesting potential lead plaintiffs to "submit information as to the agreed fees, how each firm anticipates staffing this matter, and the hourly rates for attorneys and staff."). Accordingly, Goodkind Labaton is instructed to submit to the court information concerning its proposed fee structure and its anticipated staffing of this action, in addition to its firm biography. It is also instructed to bring forth its suggestion for liaison counsel, which was not contained in its motion. The court will reserve ruling on the issue of lead counsel until it has received and reviewed such information.

## CONCLUSION

For the reasons stated above, Schroder's motion for appointment of lead plaintiff and approval of proposed lead plaintiff's selection of lead counsel is granted in part and ruling reserved in part [#10]. The motions of Koontz and Margaritis [#12] and Campbell and Ratnofsky [#15] are denied. The court orders the following cases consolidated for all purposes: *Taubenfeld v. Career Ed. Corp., et al.*, 03 C 8884; *Stellato v. Career Ed. Corp., et al.*, 03 C 8939; *Katz v. Career Ed. Corp., et al.*, 03 C 9157; *Morris, et al. v. Career Ed. Corp., et al.*, 04 C 305; *Woo v. Career Ed. Corp., et al.*, 04 C 0339; and *Schild v. Career Ed. Corp., et al.*, 04 C 0906. The court further appoints Thomas Schroder as lead plaintiff in this consolidated action. Schroder shall have until April 7, 2004 to file the supplemental information discussed above. Ruling is reserved on the motion for approval of Schroder's selection of lead counsel until that information has been received and reviewed.

ENTER: *[signature]*
JOAN HUMPHREY LEFKOW
United States District Judge

March 19, 2004

11